554 A.2d 906

**Dorothea DERCOLI, Appellant,**

v.

**PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY and Grange Mutual Casualty Company, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 29, 1988.

Decided March 3, 1989.

Anthony N. Gemma, Gemma & Gemma, Youngstown, Ohio, for appellant.

Dan P. Wimer, Mansell & Jamison, New Castle, for Pennsylvania Nat. Mut. Ins. Co.

Peter E. Horne, Balph, Nicolls, Mitsos, Flannery & Motto, New Castle, for Grange Mut. Cas. Co.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

LARSEN, Justice.

Appellant Dorothea Dercoli appeals from an order of the Superior Court affirming an order of the Lawrence County Common Pleas Court which sustained a demurrer to her complaint and dismissed her lawsuit against appellees Pennsylvania National Mutual Insurance Company (Penn National) and Grange Mutual Casualty Company (Grange) for breach of fair dealing and good faith. In her appeal the appellant frames two issues: (1) whether our decision in *Hack v. Hack*, 495 Pa. 300, 433 A.2d 859 (1981), abolishing the defense of interspousal immunity is to be given retroactive application; and (2) whether the duty of fair dealing and good faith requires an automobile insurer to properly advise its insured of the insured's entitlement to present a claim or claims under the applicable policy where the insurer advises its insured that legal representation is unnecessary and induces the insured to rely upon the insurer to pay appropriate benefits?

The issues presented by the appellant arise out of the following factual background: On the morning of July 21, 1980, the appellant was riding as a passenger in an automobile being operated by her husband, David R. Dercoli. The automobile was travelling on U.S. Route 422 in Lawrence County when, apparently, Mr. Dercoli became drowsy and fell asleep. With Mr. Dercoli asleep at the wheel, the automobile crossed over the centerline of the highway and crashed into the rear wheels of an on-coming tractor-trailer. Mr. Dercoli was killed instantly. The appellant was severely injured.

At the time of the tragic accident Mr. Dercoli was insured under two automobile insurance policies. One of the policies was with appellee Penn National and the other was with appellee Grange. Both insurers were notified of the accident and the injuries and losses resulting therefrom. In the claim process that followed, the appellant relied upon the advice of the appellees' agents to receive the benefits

due her under the applicable policies. Subsequently, after receiving the advice of the appellees' agents, the appellant began to receive certain benefits paid by the appellees under the policies in force. Appellant continued to receive the benefit checks until approximately, April, 1984.

On July 14, 1981, approximately one year after the accident and while appellant was receiving benefit checks and relying upon appellees' agents for advice, this Court decided the case of *Hack v. Hack, supra.* In *Hack* we abolished the defense of interspousal immunity as a bar to an action for personal injuries caused by the negligence of the injured victim's spouse. The appellant did not learn of the removal of this bar to suit until sometime after March of 1985.

In January, 1986, appellant filed a complaint in civil action against the appellees averring, *inter alia,* a breach of appellees' duty of fair dealing and good faith. Specifically, the appellant sets forth, as relevant allegations in her complaint, the following:

16. [U]pon notice of said motor vehicle accident by or on behalf of Plaintiff, Defendants PENN NATIONAL and GRANGE, through their authorized Agents, cooperatively and equally undertook the handling, processing and payment of Plaintiff's benefits under said Contracts.

17. At all times herein material, Plaintiff was not represented by legal Counsel, and Defendants' Agents represented to and assured Plaintiff that her claim would be processed without the need for Plaintiff to be independently represented.

18. Plaintiff reasonably relied entirely upon the advice of Defendants' agents as to the nature and extent of benefits which were due to her under said insurance contracts. Further, Defendant's agents were fully cognizant of Plaintiff's said reasonable reliance and lack of independent representation.

19. At all times material herein, and by reason of said insurance Contracts, Defendants PENN NATIONAL and GRANGE were each charged with a duty of good faith and fair dealing in respect of determination of entitle-

ment, processing, and payment of Plaintiff's benefits under said Contracts. This duty included, among other things, the obligation on the part of said Defendants to pay or advise Plaintiff as to any and all benefits to which Plaintiff reasonably appeared to be entitled under said insurance contracts.

20. By reason of the nature of said insurance Contracts, Defendants PENN NATIONAL and GRANGE occupied the position of a fiduciary with respect to determination of entitlement and payment of Plaintiff's benefits thereunder.

25. Upon the decision of *Hack vs Hack*, Supra, Defendants were thereby placed in a position of conflicting interests, in that presentation or consideration of any claim by or on behalf of Plaintiff and based upon the negligence liability of her said husband would have created a substantial additional risk of loss or liability to each Defendant.

26. Under the circumstances referred to above, and by reason of their said duty of good faith and fair dealing and their fiduciary relationship which they occupied with respect to Plaintiff, Defendants were each obligated to advise Plaintiff of her apparent right to benefits for liability coverage under said insurance Contract, in order that Plaintiff would have realized the maximum amount of benefits to which she reasonably appeared to be entitled.

27. Defendants PENN NATIONAL and GRANGE, and each of them, have breached the said insurance Contracts and the corresponding fiduciary duties and duties of good faith and fair dealing in that said Defendant had failed to advise Plaintiff as to her apparent entitlement to claim for benefits under the liability coverage of said insurance Contracts, of Defendants' conflict of interests in advising or continuing to advise Plaintiff regarding her entitlement to benefits or of her possible need for independent legal counsel, and Defendants fur-

ther failed to pay or offer to pay to Plaintiff any benefits under the liability coverage of said Contracts.

In response to appellant's complaint the appellees filed preliminary objections in the nature of a demurrer. After argument on appellees' demurrer, the lower court concluded that the appellee-insurers had no duty to inform appellant of the *Hack* decision and the effect, if any, that decision had on appellee's ability to obtain benefits under the liability provisions of the applicable policies. In reaching this conclusion the lower court cited the case of *Taglianetti v. Workmen's Compensation Appeal Board,* 503 Pa. 270, 469 A.2d 548 (1983) involving a workmen's compensation claimant. The lower court analogized the situation in the instant case to that involved in *Taglianetti.* It was decided that the reasoning applied in *Taglianetti* which held that the insured-employer had no duty to advise a compensation claimant of the maximum possible benefits was applicable to this case. Accordingly, the demurrer was sustained and appellant's complaint was dismissed. On appeal, the Superior Court affirmed. 369 Pa.Super. 289, 535 A.2d 163.

Since this is an appeal from the sustaining of a demurrer, we accept as true all well-pleaded material facts set forth in the complaint as well as all inferences reasonably deducible therefrom. *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983), *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 299 A.2d 585 (1973). In her complaint the appellant avers that upon the advice and assurances of appellees' agents, she was induced to refrain from hiring an attorney to represent her in her dealings with the appellees. She alleges that she placed her entire trust and confidence in appellees' agents and relied upon their advice as to the extent of the benefits available to her under the applicable insurance policies.

█ The appellant argues that as the spouse of David R. Dercoli and as a resident of the same household with him, she is a "named insured" under the terms of the relevant insurance policies. She argues that by virtue of the relationship that existed between her and the appellee-insurers,

the appellees were charged with a duty of fair dealing and good faith with respect to the determination of the benefits that appellant may reasonably be entitled to claim. Thus, appellant argues that when *Hack v. Hack, supra.* was decided, the appellees had a duty to inform her of the decision and of her apparent right to benefits under the liability provisions of the applicable policies as a result of that decision.

In spite of the fact that appellant was assured by appellees' agents that they would see to it that appellant received all benefits to which she was entitled, appellees' agents failed to advise her of her right to seek liability damages. The appellant argues that this failure was a breach of appellees' duty of fair dealing and good faith. In addition, appellant argues that when *Hack* abolished the bar of interspousal immunity, a conflict of interest arose with the appellees' agents who were advising the appellant. On the one hand these agents were aware of appellant's injuries and expenses and of her reliance on them for advice and guidance in her claims. On the other hand they knew that if they would advise appellant of the *Hack* decision and of her right to proceed against her husband's estate for damages, such proceedings would substantially increase the financial exposure of the appellee-insurers. Nonetheless, the appellees' agents continued to deal with the appellant on the same basis and continued to permit her to rely on them for all that she was entitled to under the policies. Considering all of the well-pleaded material facts in appellant's complaint and the reasonably deducible inferences therefrom, we believe that the appellant's arguments have merit.

We have long recognized that: "the utmost fair dealing should characterize the transactions between an insurance company and the insured." *Fedas v. Insurance Company of the State of Pennsylvania,* 300 Pa. 555, 151 A. 285 (1930). The appellees' agents in this case voluntarily undertook to provide assistance and advice to appellant and in the process advised her against retaining independent legal counsel. The appellees were bound to deal with the

appellant on a fair and frank basis, and at all times, to act in good faith. The duty of an insurance company to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim. *See: Gatlin v. Tennessee Farmers Mutual Insurance Co.,* 741 S.W.2d 324 (Tenn. 1987). *See also: Sarchett v. Blue Shield of California,* 43 Cal.3d 1, 233 Cal.Rptr. 76, 729 P.2d 267 (1987). This is especially true where the insurer undertakes to advise and counsel the insured in the insured's claim for benefits. Under such circumstances, the insurer has a duty to inform the insured of all benefits and coverage that may be available and of any potential adverse interest pertaining to the insurer's liability under the applicable policy. When *Hack* was decided and the defense of interspousal immunity was abolished, an adverse interest pertaining to appellees' financial exposure arose. Consistent with the obligation of fair dealing and good faith the appellees had a duty to inform the appellant of their conflict of interest, and of her apparent right to damages against her deceased husband's estate which ultimately would be payable under the liability provisions of the policies that insured the decedent. The appellees' failure to so inform the appellant was a breach of the duty of fair dealing and good faith. Assuring the appellant at the outset that she need not hire an independent attorney and that she would receive all that she was entitled to receive, and then failing to inform her of her apparent right to damages following the *Hack* decision is hardly dealing with appellant fairly and in good faith.

The appellees, relying on the decision in *Taglianetti v. Workmen's Compensation Appeal Board,* 503 Pa. 270, 469 A.2d 548 (1983), argue that they had no affirmative duty to advise the appellant of the *Hack* decision and her ostensible right to file a claim for damages on which appellees would ultimately be liable. *Taglianetti* involved a claim for survivor's benefits under the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended. The claimant's

husband had died of a fatal heart attack while in the course of his employment. The claimant requested information of her husband's employer as to any widow's benefits due her. She was not advised as to all possible benefits that she may claim. When she eventually learned of an additional claim available to her, the time limitation for that claim had expired. This Court held that the employer had no affirmative duty to apprise the claimant of all available benefits. (Larsen J. filed a dissenting opinion which was joined by Roberts, J.). We believe that *Taglianetti* was wrongly decided in that the decision in that case tends to relieve insurers and similar entities of the obligation to deal fairly, honestly, openly and in good faith with lay-claimants and non-experts who may be entitled to benefits and who are the very people the insurers have obligated themselves to protect.

■ The remaining issue raised in this case is whether *Hack v. Hack, supra* is to be applied retroactively to appellant's claim for damages. That is to say, did the abolition of the defense of interspousal immunity as promulgated in *Hack* apply to appellant whose claim arose out of an accident that occurred approximately one year prior to the *Hack* decision? Neither the trial court nor the Superior Court addressed this question in that each court found no duty to inform on the part of the appellees. Since, however, we have concluded that the appellees breached their duty of fair dealing and good faith in failing to inform the appellant of her apparent right to seek damages after the *Hack* decision, we are constrained to consider this issue. If *Hack* does not apply to appellant's claim, that decision would be of no benefit to her. It would follow then that the appellees' failure to inform appellant of *Hack* would not constitute a breach of their obligations toward her. If, however, *Hack* applies to appellant's claim, then the failure on the part of the appellees to inform appellant of that decision would amount to a breach of fair dealing and good faith in that she was denied a claim to which she was entitled.

In *August v. Stasak*, 492 Pa. 550, 424 A.2d 1328 (1981), we said: "retroactive application is a matter of judicial discretion which must be exercised on a case by case basis." We cited with approval the test proposed by Justice Roger Traynor of the California Supreme Court for deciding whether an overruling decision, (such as *Hack v. Hack, supra*), will have retroactive effect. The test involves a balancing of the relative hardships that would be imposed upon the respective parties.

> A judge is mindful of the traditional antipathy toward retroactive law that springs from its recurring association with injustice and reckons with the possibility that a retroactive overruling could entail substantial hardship. He may nevertheless be impelled to make such an overruling if the hardships it would impose upon those who have relied upon the precedent appear not so great as the hardships that would inure to those who would remain saddled with a bad precedent under a prospective overruling only ... [T]he outworn precedent may be so badly worn that whatever reliance it engendered would hardly be worthy of protection. Traynor, R., *La Rude Vita, La Dole Giustizia; Or Hard Cases Can Make Good Law*, 29 U.Chi.L.Rev. 223, 231–32 (1962).

Balancing the hardships in this case would require that *Hack* be applied retrospectively to the appellant's claim. The *Hack* decision eliminated the defense of interspousal immunity which acted as a bar to suit when one was injured at the hands of a negligent spouse. At the time of the *Hack* decision appellant's claim was well within the applicable statute of limitations. Thus, with the bar removed and the claim being viable and within the time limitations, it would be unfair to continue the bar as to the appellant. Further, there is no equity favoring the appellees' position that would dictate the opposite conclusion.

The order of the Superior Court is reversed and this case is remanded to the Court of Common Pleas of Lawrence County for proceedings consistent with this opinion.

PAPADAKOS, J., files a concurring opinion in which McDERMOTT, J., joins.

FLAHERTY, J., files a dissenting opinion in which ZAPPALA, J., joins.

NIX, C.J., dissents.

PAPADAKOS, Justice, concurring.

While I concur in the judgment of the Court and generally agree with the reasoning set forth in the majority opinion, I write separately for two reasons. First, I wish to disassociate myself from the pronouncement made in that opinion to the effect that *Taglianetti v. Workmen's Compensation Appeal Board*, 503 Pa. 270, 469 A.2d 548 (1983), was wrongly decided. Our decision today requires no such declaration.

Second, I must expressly take issue with Mr. Justice Flaherty's dissent.

## I.

In the instant case, insurers breached a voluntarily assumed fiduciary duty to provide Appellant with all available benefits, which duty necessarily involves taking action in accordance with changes in the law. In *Taglianetti, supra,* we agreed with the contention that an employer was under no legally imposed affirmative duty to provide information of possible worker's compensation benefits to a deceased employee's spouse where there was no evidence of fraud, intentional deception, or the making of misleading statements. This case involves a duty voluntarily assumed by an insurer; *Taglianetti* presented a stituation where we held that by law no duty to inform exists or may be imposed on an employer. Both legally and factually, the two cases are distinct. If *Taglianetti*, so recently decided, is unsound, this is neither the time nor the place to say so. Subject to the above qualification, I agree with the majority opinion.

## II.

As to Mr. Justice Flaherty's dissent, I find it unfortunate that he complicates a simple proposition of law into an earthshaking dilemma that would serve as an excuse to deny justice and fair play to a bereaved, defenseless, unsuspecting and trusting widow. Mr. Justice Flaherty's dissent, if it became law, would snatch from a poor widow the benefits she was entitled to receive but for the knowing and intentional misguidance of the insurers that induced her to place her entire trust and confidence in the insurers to see to it that she received all of the benefits to which she was entitled. Once the insurers knowingly and purposefully talked the widow out of seeking independent legal counsel, the insurers voluntarily placed themselves in the position of protecting the widow and obtaining for her all benefits that were reasonably due under the facts and state of law known to the insurers.

Our majority opinion does not transform insurance companies into legal service advisors for claimants, as feared by the dissent. On the contrary, in this case, the insurers themselves voluntarily transformed themselves into legal advisors to the widow. This accommodation offered by the insurer would certainly inure to the monetary benefit of *both* parties. Unless the dissenting opinion is suggesting that legal representation *per se* harms the interests of widows, orphans and others similarly situated, I believe that the approach outlined in the majority opinion will benefit everyone. After all, the law does not favor a volunteer. It is simple black letter law that where one gratuitously undertakes to render legal or other services and then does so in a careless or negligent way, causing harm, liability attaches. *Pascarella v. Kelley*, 378 Pa. 18, 105 A.2d 70 (1954).

Had privately retained counsel committed the same omission committed by the insurers here (not recognizing and acting upon the decision in *Hack v. Hack*, 495 Pa. 300, 433 A.2d 859 (1981)), thus causing the client a loss of liability benefits, such counsel would have been subject to a mal-

practice suit. See, Pa.R.P.C. 1.1 (Competence), 1.3 (Diligence), and 1.4 (Communication). See also, *Lichow v. Sowers*, 334 Pa. 353, 6 A.2d 285 (1939). Why should we hold the insurers, under these circumstances, to any lesser degree of responsibility?

McDERMOTT, J., joins this Concurring Opinion.

FLAHERTY, Justice, dissenting.

I dissent. Until today an insurance company on the facts pleaded in this case has had no *fiduciary* duty to an insured, even when it advised its insured that he does not need a lawyer. But if, under the guise of "fair dealing and good faith," we are now to decide that insurance companies have a fiduciary duty to advise of every possible claim, surely insurance companies will cease even to talk to claimants for fear of breaching this new judicially declared duty. However, with such a duty, if they do continue to talk to claimants, what will their obligations be? Are they obligated to advise of innovative claims against themselves? Are they obligated to inform claimants of an improbable but perhaps conceivable claim that they themselves would not agree to pay? Are they, as in this case, obligated to be on the lookout for changes in the law which might be favorable to a claimant? Until today, insurance companies have had none of these obligations.

As much as we all would like to see unfortunate victims of automobile accidents compensated fully, such compensation cannot be achieved at the cost of dismantling the insurance industry. It has always been the case that insurance companies, insureds and claimants are potential adversaries. An insured knows or should know this upon entering into an insurance contract, and a *contract* is what it is. When a loss occurs, it has always been the prerogative of an insurance company to make offers of settlement, and it has always been the prerogative of the insured to accept or reject them. Whether to accept or reject the offer, however, is a decision that only the claimant can make. If for some reason, the offer does not satisfy him, he is perfectly

free to seek independent legal counsel, notwithstanding advice to the contrary by the insurance company. To change this traditional underlying arrangement, to transform insurance companies into legal advisors for claimants, is unprecedented. In sum, I cannot believe that the approach outlined in the majority opinion will benefit anyone, and in the long run it will certainly harm the interests of those it seeks to protect.

ZAPPALA, J., joins in this Dissenting Opinion.