**Havice v. Erie Insurance Company**

*Douglas G. Miller*, for plaintiff.
*Stephen L. Banko*, for defendants.

HESS, *J.*, January 21, 2014—

## OPINION and ORDER

Before the court are the preliminary objections of the defendants Erie Insurance Company, Erie Insurance Exchange, and Erie Insurance Property & Casualty Company, Members of Erie Insurance Group (hereinafter "Erie") to an amended complaint filed by the plaintiff, J. Audrey Havice (hereinafter "Havice"). (Prelim. objs. of defs. to pl.'s am. compl., filed Sept. 20, 2013). Plaintiff's amended complaint contains three counts: at Count I, breach of contract; at Count II, bad faith; and at Count III, common law fraud and deceit. (Am. compl., filed Sept. 3, 2013). Count III of the amended complaint has been preliminarily objected to for failure to conform to law or rule of court. (Prelim. objs. of defs. to pl.'s am. compl., filed Sept. 20, 2013). Defendants argue that Count III should be stricken as a whole and that, in any event, the request for consequential damages within Count III should be stricken.

Plaintiff's amended complaint may be summarized as follows: Havice is an eighty-six year old woman residing at 11 South Thrush Drive, Carlisle, Pennsylvania 17015. (Am. compl., ¶ 1). Havice's house at said property was constructed in 1994. (Am. compl., ¶ 7). Havice purchased

an insurance policy that covered the property at 11 Thrush Drive and the personal property therein from Erie, who is qualified to transact business in the Commonwealth of Pennsylvania and maintains offices at 100 Erie Insurance Place, Erie, Pennsylvania 16530. (Am. compl., ¶¶ 2-4). Havice's insurance through Erie was in effect at all times relevant. (Am. compl., ¶ 11). In April of 2010, Havice hired a contractor to repair some loose shingles on her roof, however, she avers that her roof had no leaks at that time or beforehand. (Am. compl., ¶¶ 8-10).

On May 26, 2011, there was a hail storm in the area where Havice lived. (Am. compl., ¶ 13). Several months after the storm, Havice discovered water leaking into a window, damage to window screens, shingles that were dislodged from her roof, damage to her porch, and marks on the outside of her home and on mechanical equipment. (Am. compl., ¶ 14). As a result, Havice contacted Erie. She also asked roofing contractors to provide estimates for the cost of repairs. (Am. compl., ¶ 15). Subsequently, Havice learned that twelve other houses in her neighborhood, including neighbors on both sides of her house and directly across the street from her house, sustained damage from the May 26, 2011 hail storm that required roof repairs. (Am. compl., ¶¶18, 38).

The same company that performed the 2010 repairs to Havice's roof, Biniek Specialty Contractors, LLC (hereinafter "Biniek"), prepared an estimate for the damage that was caused by the hail storm. (Am. compl., ¶ 27). Biniek found that the roof was in significantly worse condition than when repairs were made in 2010, and their

estimate for repairs totaled $30,686.10.[1] (Am. compl., ¶¶27, 28). Additionally, Havice received an estimate from Premier Siding & Roofing (hereinafter "Premier") to make repairs. (Am. compl., ¶ 29). Havice avers that Premier estimated a total amount of repairs of $36,100.23.[2] (Am. compl., ¶ 31).

Erie inspected Havice's home in the presence of at least one of the roofing contractors that provided Havice with an estimate. (Am. compl., ¶ 20). Erie later compensated Havice for damage to gutters, downspouts, fascia, screens, and lawn ornaments. Erie determined, however, that there was no hail damage to the roof. (Am. compl., ¶¶19, 21). On November 3, 2011, Havice inquired as to why Erie was denying any damage to her roof. (Am. compl., ¶ 22). In the course of her inquiry, an Erie agent informed her that submitting false information to an insurer or submitting a false claim to an insurance company is a crime; statements that Havice interpreted as a threat and an attempt to deter her from pursuing the insurance claim. (Am. compl., ¶ 22). Further, Havice asserts that similar statements were made by Erie to her contractors, in an attempt to dissuade them from preparing their reports. (Am. compl., ¶ 50). As a result, Havice contends that she had to secure additional experts to support her claims. (Am. compl., ¶ 67). Havice suggests that the Erie agent would not have threatened her about submitting false claims if she were not an elderly woman who lived alone. (Am. compl., ¶ 68). Havice further avers that her health and well being has suffered

---

1. We note that this figure includes the cost of repairing items such as gutters, downspouts, and fascia that Havice avers elsewhere Erie did cover. *See* Am. Compl., ¶19.

2. Likewise, this figure contains some costs that Havice avers Erie did cover.

as a direct result of Erie's actions, (Am. compl., ¶ 70) stating, specifically, that she is "less mobile, is on oxygen to assist in her breathing, and was admitted to the hospital in February 2012 for pulmonary issues." (Am. compl., ¶ 71).

Pursuant to Pennsylvania Rule of Civil Procedure 1028(a), preliminary objections may be filed by any party to any pleading on several limited grounds, including the "failure of a pleading to conform to law or rule of court...." Pa.R.Civ.P. 1028(a)(2).

The standard of review for preliminary objections in this Commonwealth is well settled. Preliminary objections are properly granted only when, "based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief." *Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008) (internal citations omitted). In considering preliminary objections, "all well-pleaded allegations and material facts averred in the complaint, as well as all reasonable inferences deducible therefrom, must be accepted as true." *Wurth by Wurth v. City of Philadelphia*, 584 A2d 403, 407 (Pa. Cmwlth. 1990). However, the trial court "need not accept as true conclusions of law, unwarranted inferences from fact, argumentative allegations, or expressions of opinion." *Penn Title Ins. Co. v. Deshler*, 661 A.2d 481,483 (Pa.Cmwlth. 1995). An appellate court will only reverse a trial court's ruling on a preliminary objection when "there has been an error of law or abuse of discretion." *Excavation Technologies, Inc. v. Columbia Gas Co. of Pa.*, 936 A.2d 111, 113 (Pa. Super. 2007).

Initially, defendants seek the dismissal of Count III, common law fraud and deceit, based on the *gist of the action* doctrine. The gist of the action doctrine seeks to maintain the conceptual differences between breach of contract and tort claims. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d. 10, 14 (Pa. Super. 2002). "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals...." *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992) (superseded on other grounds) (citing *Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.*, 457 F. Supp. 1158, 1165 (E.D. Pa. 1978)). Accordingly, the gist of the action doctrine acts to foreclose tort claims (1) which arise solely from the contractual relationship between the parties; (2) which allege that the duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) which essentially duplicate the breach of contract claim or where the success of the tort claim is dependent upon the success of the breach of contract claim. *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. 2005) (citing *eToll*, 811 A.2d at 19). "[A]lthough mere non-performance of a contract does not constitute a fraud, it is possible that a breach of contract also gives rise to an actionable tort. To be construed in tort, however, the wrong ascribed to the defendant must be the gist of the action, the contract being collateral." *Bash*, 601 at 829 (internal citations omitted). More specifically, when applied to allegations of fraud:

> [W]here fraud claims are intertwined with breach of contract claims and the duties allegedly breached are created and grounded in the contract itself, the gist of

the action is breach of contract. Thus, claims of fraud in the performance of a contract are generally barred under the gist of the action doctrine.

*Hart*, 884 A.2d at 340 (internal citations and quotations omitted). Thus, "[t]he test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole." *Pa. Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1182 (Pa. Super. 2003) (citation and quotations omitted).

Applying the foregoing, we find that Count III is barred by the gist of the action doctrine. The purported misrepresentations that are the bases for Count III are alleged to have been committed in an attempt to avoid performing a duty that was created by the insurance policy. But for showing a breach of contract under the insurance policy — that the claim for roof damage should have been paid — the statements made by Erie's agent regarding submitting a false claim would lose their significance.

Our holding does not mean that Havice has no redress outside of a breach of contract action. If Havice can establish that Erie sought to avoid paying the claim in bad faith, Havice may seek interest, punitive damages, and costs under 42 Pa.C.S. 8371, which she has chosen to do.

In support of her position, without mentioning the gist of the action doctrine in her brief, plaintiff cites to the plurality opinion of *Dercoli v. Pennsylvania National Mutual Insurance. Co.*, 554 A.2d 906 (Pa. 1989). However, *Dercoli* was decided before the gist of the action doctrine was first recognized by the Pennsylvania Superior Court in *eToll*. With that in mind, we find its persuasiveness limited and conclude that the alleged misrepresentations are so

closely intertwined with the breach of contract claim that the gist of the action lies in contract. Accordingly, Count III of plaintiff's amended complaint is stricken. The issue of consequential damages contained within Count III thus becomes moot.

## ORDER

And now, this 21st day of January, 2014, upon consideration of defendants' preliminary objections to plaintiff's amended complaint, and after oral argument, heard November 8, 2013, the preliminary objections of defendant are sustained in part and dismissed in part.

For reasons contained in the opinion filed of even date herewith, defendants' preliminary objection to Count III as barred by the gist of the action doctrine is sustained.

The defendants' preliminary objection to plaintiff's claim for consequential damages in Count III is dismissed as moot.

## ORDER

And now, this 21st day of January, 2014, upon consideration of defendants' preliminary objections to plaintiff's amended complaint, and after oral argument, heard November 8, 2013, the preliminary objections of defendant are sustained in part and dismissed in part.

For reasons contained in the opinion filed of even date herewith, defendants' preliminary objection to Count III as barred by the gist of the action doctrine is sustained.

The defendants' preliminary objection to plaintiff's claim for consequential damages in Count III is dismissed as moot.