IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Passarella, : 
               Petitioner : 
               :   No.  146 C.D. 2019
      v. : 
               :   Submitted: July 12, 2019
Pennsylvania Board of Probation : 
and Parole, : 
               Respondent : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE McCULLOUGH                         FILED:  August 29, 2019

William Passarella petitions for review of a January 16, 2019 decision of the Pennsylvania Board of Probation and Parole (Board) denying his request for administrative relief and affirming its June 4, 2018 decision to recommit Passarella as a convicted parole violator (CPV). In these decisions, the Board revoked sentencing credit that Passarella received for days spent in good standing at liberty on parole, otherwise known as "street time," that it had previously awarded him in a prior recommitment as a technical parole violator (TPV).

**Factual and Procedural Background**

Passarella was found guilty of aggravated assault, two counts of access device fraud, and identity theft and was sentenced to a term of incarceration of three years and one month to seven years. (Certified Record (C.R.) at 1.) Passarella's

minimum sentence date was November 10, 2015, and his maximum sentence date was October 10, 2019. *Id.*

Passarella was paroled on October 3, 2016, and, as a condition of his parole, was required to reside at the Gaudenzia Community Corrections Residence (Gaudenzia) in Philadelphia. (C.R. at 1-2.) On January 13, 2017, Passarella left Gaudenzia and failed to return. (C.R. at 25.) On January 28, 2017, the Board issued a warrant to commit and detain Passarella. (C.R. at 6.) Passarella was arrested by the Haverford Police Department that same day. (C.R. at 25.)

In February 2017, Passarella was provided a notice of charges and hearing, informing him that he was being charged with multiple technical parole violations. (C.R. at 19-20.) Passarella signed a waiver of his right to a violation hearing and admitted to violating the conditions of his parole. (C.R. at 7.) The Board issued a decision on June 15, 2017, recommitting Passarella as a TPV for leaving his district without permission, changing his residence without permission, and failing to successfully complete the Gaudenzia program. (C.R. at 28-30.) The Board extended Passarella's maximum sentence date to October 25, 2019, to account for the 15 days he spent in delinquency. (C.R. 26-30.) In making the new computation, the Board credited Passarella for the 102 days of street time that he spent in good standing before absconding. *Id.* Following the recalculation, Passarella had 819 days remaining on his sentence. *Id.*

Meanwhile, in the interval before the Board adjudicated Passarella a TPV, Passarella was charged in Delaware County for the crimes of access device fraud, receiving stolen property, and theft of services. (C.R. at 72-85, 91.) These charges stemmed from Passarella's conduct during the 15-day period when he was delinquent on parole. *Id.*

On July 28, 2017, Passarella was released on reparole to the Gaudenzia program. (C.R. at 36-39.) However, Passarella failed to report to Gaudenzia that day as instructed. (C.R. at 60.) Thereafter, on August 28, 2017, the Board issued a warrant to commit and detain Passarella and Board agents arrested him that same day. (C.R. at 44, 60.) In September 2017, the Board again charged Passarella with multiple technical violations of his parole and Passarella waived his right to a violation hearing and admitted to violating the technical conditions of his parole. (C.R. at 45, 54-55.) The Board issued a decision on October 6, 2017, recommitting Passarella as a TPV for leaving his district without permission, changing his residence without permission, failing to successfully complete the Gaudenzia program, and failing to take psychotropic medication as prescribed by his doctor. (C.R. at 68-70.) The Board also extended Passarella's maximum sentence date to November 25, 2019, to account for the 31 days he was delinquent on parole. (C.R. at 61.) Thus, following the recalculation, Passarella still had 819 days remaining on his sentence.

Subsequently, on January 10, 2018, Passarella pled guilty to the Delaware County charges of access device fraud, receiving stolen property, and theft of services and was sentenced by the Delaware County Court of Common Pleas to a term of 6 months to 24 months. (C.R. at 71, 80-81.) In February 2018, the Board provided Passarella with a notice of charges and hearing regarding the revocation of his parole for having new criminal convictions. (C.R. at 87.) Passarella waived his right to a revocation hearing and admitted to the new criminal convictions. (C.R. at 95.) By decision issued June 4, 2018, the Board recommitted Passarella as a CPV, to serve 12 months of backtime. (C.R. at 108-109.) The Board also recalculated Passarella's maximum sentence date to July 19, 2020. *Id.* To calculate Passarella's new maximum sentence date, the Board revoked the 102 days of street time it had previously awarded

3

him in connection with his recommitment as a TPV and added these days to the 819 days left remaining on his sentence. *See* C.R. at 106. This meant that after the recalculation, Passarella had a total of 921 days remaining on his sentence. *Id.*

Passarella filed an administrative remedies form in response to the Board's June 4, 2018 decision. (C.R. at 110.) In the "Administrative Appeal" section of the form, Passarella checked the box titled "Recommitment Challenge (Time/term given by Board, automatic reparole, return to custody, etc.)," and provided the following written explanation: "Custody return should be August 28, 2017, and not January 10, 2018; maximum sentence improperly re-computed." *Id.* Further, in the section of the form titled, "Petition for Administrative Review (appeal of a revocation decision regarding sentence calculations)," Passarella checked the box titled "Sentence Credit Challenge," and provided the following explanation: "Not given credit for time served exclusively pursuant to board warrant; not given credit for all periods of incarceration on this sentence." *Id.*[1]

On January 16, 2019, the Board mailed its response to Passarella's administrative appeal, affirming its decision. The Board explained that when Passarella was paroled on July 28, 2017, he had a total of 819 days remaining on his sentence. (Board decision at 1.) The Board noted that its decision to recommit Passarella as a CPV "authorized the recalculation of [his] sentence to reflect that [he] receive no credit for the time [he was] at liberty on parole." *Id.* The Board decided not to award Passarella "credit for time at liberty on parole from October 3, 2016 to January 13, 2017 (102 days)." *Id.* The Board explained that "[a]dding this time together

---

[1] We note that although Passarella argued in his administrative remedies form that the Board used the wrong return to custody date when calculating his maximum sentence and that he had not been given credit on his original sentence for time in which he was incarcerated exclusively pursuant to the Board's warrant, Passarella has not raised this issue or argument in his brief filed with this Court.

4

mean[t] [he] still had a total of 921 days remaining on [his] sentence based on [his] recommitment." *Id.* Further, the Board found that Passarella did not post bail after he was arrested for the Delaware County criminal charges and that he had been sentenced on January 10, 2018, to a new term of state confinement. *Id.* The Board noted that "[b]ased on these facts, [it] did not award backtime credit," meaning he "had a total of 921 days remaining on [his] original sentence." *Id.* The Board determined that Passarella did not become available to commence serving his original sentence until January 10, 2018, when he was sentenced on the Delaware County convictions, and that adding 921 days to this date resulted in a new maximum sentence date of July 19, 2020. (Board decision at 2.)

## Discussion

On appeal,[2] the sole issue raised by Passarella is that the Board abused its discretion by failing to give him credit for all time spent in good standing on parole and, thus, improperly recomputed his maximum sentence. Passarella argues that pursuant to *Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401 (Pa. Cmwlth. 2019) (holding that when the Board recommits a CPV, it cannot revoke credit that a parolee was granted in a previous parole that resulted in recommitment as a TPV), *petition for allowance of appeal pending* (Pa., No. 92 EAL 2019, filed March 1, 2019), when the Board recalculated his maximum sentence following his recommitment as a CPV it was prohibited from revoking the 102 days of street time it previously awarded him when he was recommitted as a TPV. In response, the Board

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether the decision was in accordance with the law, or whether the necessary findings of fact were supported by substantial evidence. *Kerak v. Pennsylvania Board of Probation and Parole*, 153 A.3d 1134, 1138 n.9 (Pa. Cmwlth. 2016).

5

argues that Passarella waived this issue and that *Penjuke* should not be applied retroactively.

**A. Statutory and Legal Background**

Initially, we note that under section 6138(a)(2) of the Pennsylvania Prisons and Parole Code (Code), where the Board decides to recommit a parolee as a CPV, "the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole." 61 Pa.C.S. §6138(a)(2). Section 6138(a)(2.1) of the Code, which was added to the Code by the Act of July 5, 2012, P.L. 1050, states that with the exception of certain violent crimes, "[t]he Board **may**, **in its discretion**, award credit to a parolee recommitted [as a CPV] for the time spent at liberty on parole." 61 Pa.C.S. §6138(a)(2.1) (emphasis added). Conversely, section 6138(c)(2) of the Code provides that "[i]f the parolee is recommitted under this subsection [as a TPV], the parolee **shall be given credit** for the time served on parole in good standing but with no credit for delinquent time and may be reentered to serve the remainder of the original sentence or sentences." 61 Pa.C.S. §6138(c)(2) (emphasis added).

In *Penjuke*, the parolee spent 793 days on parole in good standing before being declared delinquent. 203 A.3d at 404. When the Board recommitted Penjuke as a TPV, it did not add the 793 days he spent in good standing to his maximum sentence date. *Id.* After Penjuke was reparoled, he was convicted of several crimes and recommitted as a CPV. *Id.* In recalculating Penjuke's maximum sentence date following his recommitment as a CPV, the Board revoked the credit for the 793 days

6

he had been awarded in his prior recommitment as a TPV and added that amount to his maximum sentence date. *Id.*

We noted that the General Assembly amended the Code to add section 6138(a)(2.1) in 2012 and that, in doing so, "the General Assembly, for the first time in the history of the [Code], vested the Board with discretion to grant a CPV with credit for time spent at liberty on parole." *Penjuke*, 203 A.3d at 409. We explained that in stark contrast to the former section of the Code, "a parolee who is recommitted as a CPV no longer forfeit[ed], automatically and unconditionally, credit for days spent during the parole period in which the crime was committed." *Id.* at 408-09. Therefore, we concluded that the 2012 amendment rendered earlier precedent interpreting the former section of the Code of little value. *Id.* at 411-13.

Turning to the current iteration of the Code, we explained that "the clauses 'had the parole not been granted' and 'at liberty on parole' in section 6138(a)(2) cannot reasonably be interpreted to permit the Board to go beyond the 'parole period' mentioned in that section, which is couched solely in relation and reference to the 'parolee's recommitment' as a CPV." *Penjuke*, 203 A.3d at 415 (quoting 61 Pa.C.S. §6138(a)(2)). We held that the clause "shall be given no credit" applied "only to the single and specific period of parole that led to recommitment as a CPV." *Id.* We also explained that "section 6138(c)(2) positively states that a TPV '**shall** be given credit for the time served on parole in good standing,'" and that "[t]hrough this directive of the General Assembly, the Board has no choice over the matter and must grant credit to the parolee who is recommitted as a TPV." *Penjuke*, 203 A.3d at 416 (emphasis added) (quoting 61 Pa.C.S. §6138(c)(2)). Consequently, we determined that "the General Assembly [had] not entrusted the Board with the authority to revoke sentence credit granted by section 6138(c)(2) of the [Code]." *Penjuke*, 203 A.3d at 417.

7

In sum, we held that "the only time that remains eligible for forfeiture for a parolee recommitted as a CPV is the limited period of 'time that falls between the parolee's most recent reparole and his recommitment.'" *Id.* (quoting *Young v. Pennsylvania Board of Probation and Parole*, 189 A.3d 16 (Pa. Cmwlth. 2018), *appeal granted*, 200 A.3d 5 (Pa. 2019)). We further concluded that "in recommitting Penjuke as a CPV, the Board could not reach back . . . into the past periods of parole and also take away or revoke credit that was previously granted to Penjuke as a TPV—credit which . . . should have already been applied to his original sentence." *Penjuke*, 203 A.3d at 417 (internal quotation marks omitted). Because "the Board lacks the statutory authority to revoke street time credit previously granted to a parolee as a TPV when it subsequently recommits the parolee as a CPV," we decided that the Board erred when it revoked the 793 days of good standing street time that Penjuke had acquired in the parole period leading to his recommitment as a TPV. *Id.* at 420.

## B. Waiver

Turning to the instant matter, we first address the Board's waiver argument. The Board argues that Passarella waived his claim that he is entitled to credit for the 102 days he was on parole by failing to raise the issue in his petition for administrative review. The Board contends that the claim is waived pursuant to both section 703(a) of the Administrative Agency Law, 2 Pa.C.S. §703(a) (providing that a party may not raise upon appeal any question not raised before the agency), and Rule 1551(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1551(a) (providing that "no question shall be heard or considered by the court which was not raised before the government unit"). The Board argues that Passarella waived the argument that the Board failed to provide him 102 days of street time credit for the

period from October 3, 2016, to January 13, 2017, when he was in good standing on parole because his petition for administrative review failed to raise this issue.

Here, on the administrative remedies form, Passarella checked the box titled "Recommitment Challenge (Time/term given by Board, automatic reparole, return to custody, etc.)." (C.R. at 110.) Passarella also provided the following written explanation: "Custody return should be August 28, 2017, and not January 10, 2018; **maximum sentence improperly recomputed**." *Id.* (emphasis added). By stating that his maximum sentence was improperly recomputed, Passarella put the Board on notice that he challenged the calculation of his maximum sentence date, including the forfeiture of 102 days of street time. While Passarella may not have explicitly stated that he was challenging the Board's forfeiture of his previous street time credit, this issue was subsumed within the issue of whether the Board improperly recomputed his maximum sentence. In fact, based on the detailed explanation in the Board's decision for revoking Passarella's 102 days of street time, the Board appears to have assumed that Passarella challenged the forfeiture of the same. Accordingly, we conclude that Passarella preserved the street time credit revocation issue for our review.[3]

---

[3] However, even if Passarella had failed to raise the issue in his administrative appeals form, we would still conclude that an exception to the general waiver rule applies. Section 703 of the Administrative Agency Law provides that a party may not raise any issue in an appeal that was not raised before an agency "unless allowed by the court upon due cause shown." 2 Pa.C.S. §703(a). Further, Rule 1551(a) of the Rules of Appellate Procedure provides, in part, that "[n]o question shall be heard or considered by the court which was not raised before the government unit except . . . [q]uestions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit." Pa.R.A.P. 1551(a) (emphasis added). In *Penjuke*, we held for the first time that when the Board recommits a parolee as a CPV, it cannot revoke credit that the parolee was previously granted in a previous parole that resulted in recommitment as a TPV. 203 A.3d at 420. *Penjuke*, however, was issued after Passarella had already submitted his administrative remedies form. Thus, even if Passarella had not raised the forfeiture of his street time credit in his administrative remedies form, because this Court issued its new rule of law regarding street time credit after Passarella already submitted his form, we would conclude that Passarella "could not by

9

## C. Retroactivity

The Board next argues that, even if the street credit issue is not deemed waived, *Penjuke* should not be applied retroactively to Passarella's case. The Board argues that, in determining whether a new decision should be applied retroactively, Pennsylvania courts employ a three-factor test that examines (1) the purpose of the new rule; (2) the extent of reliance by courts and litigants upon the old rule; and (3) the effect the new rule will have on the fair administration of justice. The Board argues that under the previous rule, requiring parolees to forfeit credit previously spent on parole acted as a strong deterrent to prevent parolees from returning to criminal behavior while enjoying the conditional liberty of parole. Because the old rule was heavily relied upon by the Board for nearly four decades and *Penjuke* was a "sea change" in the law, the Board maintains that it should not be applied retroactively. (Board's Br. at 13.)

Regarding retroactivity, "[t]he general rule in Pennsylvania is that appellate courts apply the law in effect at the time of appellate review." *Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014). Thus, "we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[] before the judgment becomes final." *Id.*; *see also Fetherman v. Department of*

---

the exercise of due diligence have raised" the issue before the Board, Pa.R.A.P. 1551(a), and also that he had "due cause," 2 Pa. C.S. §703(a), for not raising the issue sooner and, therefore, that he could raise the issue for the first time on appeal to this Court. *See, e.g.*, *Thompson v. Workers' Compensation Appeal Board (Exelon Corp.)*, 168 A.3d 408, 412 n.4 (Pa. Cmwlth. 2017) (concluding that because a court decision issuing a new rule of law was not issued until after the claimant had already appealed, claimant was permitted, pursuant to Pa.R.A.P. 1551(a), to raise the issue affected by the new rule of law for the first time on appeal to this Court); *Heugel v. Workers' Compensation Appeal Board (U.S. Airways)* (Pa. Cmwlth., No. 703 C.D. 2016, filed January 12, 2017), slip op. at 7-8 (same). Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

*Transportation, Bureau of Driver Licensing*, 167 A.3d 846, 854 (Pa. Cmwlth. 2017) (same). However, the Supreme Court has cautioned against applying this general rule "rotely." *Passarello*, 87 A.3d at 307. Instead, "whether a judicial decision should apply retroactively is a matter of judicial discretion to be decided on a case-by-case basis." *Id.* To determine whether a decision announcing a new rule of law should be applied retroactively, the court should "consider whether: (1) retroactive effect will further or hinder the purpose of the new rule; (2) the parties will be **unfairly** prejudiced because they relied on the old rule; and (3) giving the new rule retroactive effect will detrimentally affect the administration of justice." *Id.* (emphasis added).

It is beyond cavil that *Penjuke* announced a new rule of law, holding for the first time that when the Board recommits a parolee as a CPV, it cannot revoke credit that the parolee was granted in a previous parole that resulted in recommitment as a TPV. Employing the retroactivity test in the instant matter, we first observe that the purpose of our decision in *Penjuke* was to ensure this Court's fidelity to the language of the amended Code and the General Assembly's intent in enacting the amendments. Because "the 2012 Amendment destabilize[d] the raison d'être that once constituted and sustained the considered judgment of our precedent," we were willing to overturn our earlier decisions interpreting former section 6138 of the Code. *Penjuke*, 203 A.3d at 414. Since the purpose of *Penjuke* was to interpret the 2012 amendments to the Code, we can discern little to no utility in adhering to overturned precedent that relied on an obsolete version of the Code. Applying the new rule of law from *Penjuke* retroactively furthers the purpose of the new rule by guaranteeing that the 2012 amendments are correctly interpreted with respect to parole revocations and the granting of credit for street time that is accumulated during a parole period that results in recommitment as a TPV.

11

As for the second factor of the retroactivity test, *i.e.*, "whether the parties will be unfairly prejudiced because they relied on the old rule," *Passarello*, 87 A.3d at 307, the Board argues that the old rule was heavily relied on by the Board and this Court for nearly four decades. While it is true that the old rule was longstanding, our Supreme Court has noted that, in assessing parties' reliance on a prior rule of law, a court may balance "the relative hardships that would be imposed upon the respective parties." *Dercoli v. Pennsylvania National Mutual Insurance*, 554 A.2d 906, 910 (Pa. 1989). Specifically, a court may weigh whether the hardships imposed upon those who relied upon the prior precedent are less than or greater than "the hardships that would inure to those who would remain saddled with a bad precedent under a prospective overruling only. . . [T]he outworn precedent may be so badly worn that whatever reliance it engendered would hardly be worthy of protection." *Id.*

Here, although the hardship faced by the Board in having to change its longstanding practice should not be discounted, any hardship faced by the Board in retroactively applying the new rule is undoubtedly less than that faced by parolees. This is because, by only applying the new rule prospectively, a parolee who was recommitted as a CPV before the new rule was issued "would remain saddled with [the] bad precedent" of losing credit previously awarded as a result of recommitment as a TPV, which ultimately would result in a longer incarceration period. *Id.* Because the possibility of a longer and unnecessary incarceration period is a greater hardship than any inconvenience faced in applying a new law, we conclude that the Board will not be **unfairly** prejudiced by its prior reliance on the old law.

Finally, we address whether "giving the new rule retroactive effect will detrimentally affect the administration of justice." *Passarello*, 87 A.3d at 307. The Board argues that if the new rule of law is given retroactive application it will

12

overwhelm the Board and this Court "with an immense flood of litigation," because "[i]t would allow countless [CPVs] to challenge the Board's decisions to deny them credit for prior periods of parole they spent at liberty on parole." (Board's Br. at 14.) The Board asserts that this would further result in a large number of defense counsel seeking to withdraw from litigation brought by CPVs seeking to challenge decisions of the Board.

While we understand the Board's concerns, we find them unpersuasive. Passarella's case was on appeal to this Court at the time *Penjuke* was decided. The general rule is that we apply the law in effect at the time of appellate review, meaning that "a party whose case is pending on direct appeal is entitled to the changes in the law which occur before final judgment." *Passarello*, 87 A.3d at 307. We see no reason to deviate from the general rule here.[4] Although the Board argues that applying *Penjuke* retroactively to Passarella's situation will result in a flood of litigation, our decision to apply the general retroactivity rule only affects cases with similar procedural situations; *i.e.*, those cases still pending on appeal to this Court since *Penjuke* was decided, which represent a relatively finite number of cases. *See, e.g.*, *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635, 641 & n.9 (Pa. Cmwlth. 2018) (applying general retroactivity rule only to those cases still being actively litigated at the time the new rule of law was issued and not deciding whether the new law applied to other factual scenarios not before the Court). Thus, because we conclude that applying *Penjuke* to cases pending on appeal

---

[4] In fact, in the unreported decision of *Zalewski v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 836 C.D. 2018, filed February 26, 2018), slip op. at 7, we noted that although the Board had revoked a parolee's time earned on parole as a TPV before our decision in *Penjuke*, because that case was decided while the parolee's case was pending on direct appeal to this Court the parolee was entitled to the benefit of changes in the law occurring before final judgment.

since it was decided will not detrimentally affect the administration of justice, we will apply *Penjuke* to the instant case.

## D. Application of *Penjuke*

Turning to the merits, we first observe that the Board does not attempt to argue that, in the event we apply *Penjuke*, the Board should not have revoked credit for good standing on parole that Passarella earned in his previous recommitment as a TPV. As discussed, when the Board recommitted Passarella as a TPV on June 15, 2017, it initially awarded him credit for the 102 days he spent at liberty on parole from October 3, 2016 to January 13, 2017, when recalculating his maximum sentence date. After Passarella was given credit for the 102 days, he had 819 days remaining on his sentence. However, when the Board later recommitted Passarella as a CPV on June 4, 2018, it revoked the 102 days of street time it had previously awarded him, thus, adding 102 days to his maximum sentence date. *See* C.R. at 106. Accordingly, after being recommitted as a CPV, Passarella had a total of 921 days remaining on his sentence, instead of 819 days.

*Penjuke* held that under Section 6138(c)(2) of the Code, the Board must grant credit for time served on parole in good standing to a parolee who is recommitted as a TPV. *Penjuke*, 203 A.3d at 416. Further, *Penjuke* held that when recommitting a parolee as a CPV, the Board may not "reach back" into past periods of parole and take away or revoke credit that was previously granted to a parolee as a TPV. *Id.* at 416. Here, however, the Board did just that. Under *Penjuke*, the Board was not permitted to "reach back" and revoke the 102 days it previously awarded to Passarella as a TPV when recommitting him as a CPV.

14

## Conclusion

Because the Board erred in revoking the 102 days of street time credit it previously awarded to Passarella as a TPV, we reverse this portion of the Board's order and remand for the Board to reinstate the 102 days of credit and recalculate Passarella's maximum sentence date to account for this time.

_____

PATRICIA A. McCULLOUGH, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Passarella, : 
                    Petitioner : 
                               : No. 146 C.D. 2019
v.                             : 
                               : 
Pennsylvania Board of Probation : 
and Parole,                    : 
                    Respondent : 

## *ORDER*

AND NOW, this 29ᵗʰ day of August, 2019, the January 16, 2019 decision of the Pennsylvania Board of Probation and Parole (Board) is reversed to the extent that it revoked 102 days of street time credit it previously awarded to William Passarella (Passarella) as a technical parole violator. The matter is remanded to the Board to reinstate the 102 days of credit to Passarella and issue a new adjudication that makes the necessary adjustment to Passarella's maximum sentence date.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Passarella,  :
                Petitioner  :
                        :
          v.  :
                        :
Pennsylvania Board of Probation  :
and Parole,  :   No. 146 C.D. 2019
             Respondent  :   Submitted: July 12, 2019


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge


DISSENTING OPINION
BY JUDGE COVEY                          FILED:  August 29, 2019


      For the reasons set forth in the dissenting opinion in *Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401 (Pa. Cmwlth. 2019), in which I joined, I respectfully dissent here since the Majority relies on *Penjuke*.


                            _____
                            ANNE E. COVEY, Judge