IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Martin Penjuke, | : | |
| Petitioner | : | |
| | : | No. 1304 C.D. 2017 |
| v. | : | |
| | : | Argued: November 14, 2018 |
| Pennsylvania Board of Probation | : | |
| and Parole, | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH                                     FILED: February 1, 2019


Martin Penjuke (Penjuke) petitions for review of the August 18, 2017 order of the Pennsylvania Board of Probation and Parole (Board) denying his request for administrative relief and affirming its May 5, 2017 decision to recommit Penjuke as a convicted parole violator (CPV) for the remaining term of his unexpired sentence. In this decision, the Board revoked, or at least failed to honor, sentencing credit that Penjuke received for days he spent in good standing at liberty on parole, also known as "street time,"[1] during a prior period of parole that resulted in his

---

[1] *Dorsey v. Pennsylvania Board of Probation and Parole*, 854 A.2d 994, 996 n.3 (Pa. Cmwlth. 2004).

recommitment as a technical parole violator (TPV).  For authoritative support, the Board cited an established line of case law from this Court.

Upon deliberation, we have convened *en banc* to reevaluate whether the precedent the Board relied upon remains viable or "good law" after, and in light of, a statutory amendment and our recent decision in *Young v. Pennsylvania Board of Probation and Parole*, 189 A.3d 16 (Pa. Cmwlth. 2018) (*en banc*), *appeal granted*, __ A.3d __ (Pa., No. 455 MAL 2018, filed January 2, 2019).

The pertinent facts of this case are uncontested and are as follows.  In connection with three separate criminal incidents occurring in 2012, Penjuke pleaded guilty to two charges of driving under the influence and was convicted of simple assault.  A trial court sentenced Penjuke to an aggregate term of imprisonment of one year and nine months to nine years, and his minimum and maximum sentence dates were March 28, 2013, and June 28, 2020, respectively.  Penjuke is incarcerated at the State Correctional Institution at Coal Township.  (Certified Record (C.R.) at 1, 24-26.)

By decision recorded April 20, 2013, the Board granted Penjuke parole.  Prior to his release, Penjuke signed conditions governing his parole advising that, "[i]f you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole."  (C.R. at 32.)  On June 26, 2013, Penjuke was released, and he spent 793 days (or approximately 2 years and 3 months) on parole in good standing, until August 28, 2015, when the Board declared him delinquent.  Thereafter, Penjuke waived his rights to a revocation hearing and the assistance of counsel, and admitted that he violated the conditions of his parole for changing his

residence without permission and failing to maintain regular contact with parole supervisors. On March 28, 2016, the Board recommitted Penjuke as a TPV and extended his maximum sentence date from June 28, 2020, to December 12, 2021, to account for 167 days that he spent in delinquency. Consistent with the applicable statutory provision,[2] the Board did not add the 793 days that Penjuke spent in good standing to his maximum sentence date. (C.R. at 42, 47-62.)

On July 20, 2016, the Board reparoled Penjuke, and he again signed conditions governing his parole including the advisement concerning credit for street time mentioned above. On July 20, 2016, the Board released Penjuke. Shortly thereafter, on July 28, 2016, the police arrested Penjuke and he was charged with simple possession of a controlled substance, possession of drug paraphernalia, loitering and prowling at night, public drunkenness, and disorderly conduct. On February 6, 2017, Penjuke pleaded guilty to simple possession, and a trial court sentenced him to one year of probation on February 28, 2017. The Board then provided Penjuke with a notice of charges and, on March 13, 2017, Penjuke waived his rights to a revocation hearing and the assistance of counsel, and admitted that he was convicted of a crime. In a hearing report dated March 13, 2017, the Board accepted Penjuke's waivers and admission to being a CPV. (C.R. at 94-100, 109-117). In the "dispositional" section located on page two of the hearing report, the Board provided a notation: "The offender's adjustment was poor. He incurred a new criminal arrest a week after his release." (C.R. at 110.) On page three of the hearing report, the Board checked the box labeled "No" and declined to award Penjuke credit for time spent at liberty on parole. (C.R. at 111.)

---

[2] "If the parolee is recommitted under this subsection [as a TPV], the parolee shall be given credit for the time served on parole in good standing . . . ." 61 Pa.C.S. §6138(c)(2).

On April 27, 2017, the Board recommitted Penjuke as a CPV, and recalculated his maximum sentence date, extending it to February 22, 2023. In making this computation, the Board credited Penjuke with 214 days that he spent in confinement on the criminal charges but, due to his status as a CPV, the Board did not provide him with credit for any of the days that he spent on reparole. Further, and at issue here, the Board effectively rescinded the 793 days of street time that Penjuke spent in good standing when he served his prior parole and added that amount in increasing the maximum sentence date. (C.R. at 66-78, 82-103.)

On May 22, 2017, Penjuke submitted a request for administrative relief, challenging, among other things, the Board's authority to forfeit or revoke the 793 days of credit that he acquired for the street time that he spent in good standing during the parole period that led to his recommitment as a TPV. Penjuke also questioned the accuracy of and statutory basis for the Board's recalculation of his maximum sentence.

On August 18, 2017, the Board denied the request. Citing dispositive case law from this Court, the Board concluded that when Penjuke was recommitted as a CPV, he automatically forfeited all of his street time, including credit for the days that he previously accumulated during the original parole period. (Board's decision at 1.)

Penjuke then filed a petition for review. During the pendency of the appeal, this Court rendered its decision in *Young*. By *per curiam* order dated July 9, 2018, we entered an order directing the parties to file supplemental briefs addressing the effect, if any, that *Young* may have on the issues presented.[3] The parties have

---

[3] Although our Supreme Court granted allowance of appeal in *Young*, that decision remains binding on this Court, and under *stare decisis*, we are obligated to apply *Young* and its rationale, **(Footnote continued on next page…)**

complied, and, on October 10, 2018, we entered an order listing the case for oral argument before the Court *en banc*.

## Statutory and Legal Background

In 2009, our General Assembly codified and essentially reenacted former section 21.1 of the Parole Act[4] in nearly identical language in what became section 6138 of the Prisons and Parole Code (Parole Code). 61 Pa.C.S. §6138.[5] Under both versions of the statute, collectively referred to as the Parole Statutes, the Board could recommit a parolee to prison in two distinct situations: where the parolee violated the terms and conditions of parole, legally termed a TPV, or where the parolee committed and was convicted of a crime punishable by imprisonment, legally termed a CPV.[6] In the event the parolee was recommitted as a TPV, the Parole Statutes dictated that the parolee "shall be given credit for the time served on parole in good standing . . . and may be reentered to serve the remainder of the original sentence or sentences." 61 Pa.C.S. §6138(c)(2); *former* 61 P.S. §331.21a(b). On the other hand, if a parolee was recommitted as a CPV, the Parole Statutes

---

**(continued…)**

unless or until it is overruled by our Supreme Court. *See Pries v. Workers' Compensation Appeal Board (Verizon Pennsylvania)*, 903 A.2d 136, 144 (Pa. Cmwlth. 2006).

[4] Act of August 6, 1941, P.L. 861, *as amended,* added by the Act of August 24, 1951, P.L. 1401, *formerly* 61 P.S. §331.21a. The Parole Act was repealed by the Act of August 11, 2009, P.L. 147, when the statute was codified into the Parole Code, 61 Pa.C.S. §§101-6309.

[5] *See Young*, 189 A.3d at 20 nn.8-9; *Richards v. Pennsylvania Board of Probation and Parole*, 20 A.3d 596, 598 n.3 (Pa. Cmwlth. 2011) (*en banc*).

[6] *See* Wile, PENNSYLVANIA LAW OF PROBATION AND PAROLE §16:15 (3rd ed. 2010).

5

mandated, without exception, that the parolee "shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and shall be given no credit for the time at liberty on parole." 61 Pa.C.S. §6138(a)(2); *former* 61 P.S. §331.21a(a).

As documented in our case law, and by the facts of this case, there have been instances where a parolee was released on parole and recommitted as a TPV, and the Board provided the parolee with credit for days spent in good standing in accordance with the plain language of section 6138(c)(2) of the Parole Code or its prior version, former section 21.1(b) of the Parole Act. Subsequently, the parolee was reparoled and was later recommitted as a CPV, and the Board did not provide the parolee with credit for the time spent on reparole, due to the parolee's status as a CPV, pursuant to the verbiage of section 6138(a)(2) of the Parole Code or its predecessor, former section 21.1(a) of the Parole Act. In this situation, a legal issue emerged concerning the Board's statutory authority: could the Board, in recommitting a parolee as a CPV, also take away the credit that the parolee previously accumulated during the parole period where the parolee was recommitted as a TPV?

In 1984 and 1986, this Court issued two foundational opinions that answered the question in the affirmative, *Anderson v. Pennsylvania Board of Probation and Parole*, 472 A.2d 1168 (Pa. Cmwlth. 1984), and *Andrews v. Pennsylvania Board of Probation and Parole*, 516 A.2d 838 (Pa. Cmwlth. 1986). Since then, *Anderson* and *Andrews* have been followed and relied upon by this Court in numerous cases. *See, e.g.*, *Richards v. Pennsylvania Board of Probation and Parole*, 20 A.3d 596, 599 (Pa. Cmwlth. 2011) (*en banc*) (collecting cases). In summarizing the proposition of law that developed, the revered then-Senior Judge

6

Kelley, writing for the panel in *Armbruster v. Pennsylvania Board of Probation and Parole*, 919 A.2d 348 (Pa. Cmwlth. 2007), stated:

> Section 21.1(a) . . . provides that a [CPV] "shall be given no credit for the time at liberty on parole." 61 P.S. §331.21a. Upon recommitment as a [CPV], the parolee must serve the remainder of the term which he would have been compelled to serve had he not been paroled with no credit given for street time. While Section 21.1(b) . . . provides that a [TPV] will be given credit for street time served in good standing, time spent in good standing prior to recommitment for technical violations is not shielded from forfeiture where the parolee subsequently commits a new crime and is recommitted as a [CPV]. Thus, upon recommitment as a [CPV], in addition to losing all time spent at liberty during the current parole, a parolee will also forfeit all credit received for time spent in good standing while on parole prior to his previous recommitment as a [TPV].

919 A.2d at 351.

In our decisional law, this Court has generally emphasized that as a matter of legislative intent and, to a lesser extent, statutory language, former section 21.1(a) of the Parole Act and/or section 6138(a)(2) of the Parole Code necessitated the conclusion that a CPV forfeit credit for **all** the time spent on parole, even time that was credited for a prior parole period where the parolee was recommitted as a TPV. In notable measure, we have supported our conclusion with the fact that the Board did not have any discretion to grant or otherwise award sentencing credit to a CPV, and loss of all street time was, therefore, of an automatic and mandatory nature. *See, e.g.*, *Young*, 189 A.3d at 20-21; *Melendez v. Pennsylvania Board of Probation and Parole*, 944 A.2d 824, 825-26 (Pa. Cmwlth. 2008); *Palmer v. Pennsylvania Board of Probation and Parole*, 704 A.2d 195, 197 (Pa. Cmwlth. 1997); *Houser v.*

7

*Pennsylvania Board of Probation and Parole*, 682 A.2d 1365, 1367-68 (Pa. Cmwlth. 1996).

For example, in the genesis case of *Anderson*, the parolee was recommitted as a CPV, and the Board recalculated his maximum sentence date to include the preceding periods that he spent at liberty on parole and was recommitted as a TPV. The parolee argued that former section 21.1(a) of the Parole Act required a CPV to forfeit only that time on parole he accumulated since the date of the most recent release on parole. The parolee further argued that the Board had no power to revoke street time that he spent in good standing and acquired during previous instances of parole that led to recommitment as a TPV.

Unable to locate any precedent that was on point, this Court considered and focused upon the legislative intent behind former section 21.1, noting that "the General Assembly intended [s]ection 21.1(a) to be a strong deterrent to prevent parolees from returning to criminal behavior while enjoying the conditional liberty on parole." *Anderson*, 472 A.2d at 1171. We rejected the parolee's proposed construction of former section 21.1(a) because, "[u]nder this interpretation, a parolee with one or more prior recommitments as a TPV faces a substantially reduced period of confinement should he subsequently be recommitted as a CPV and the intended deterrent effect would be weakened accordingly." *Id.* In so determining, this Court in *Anderson* agreed with the Board that if the parolee's position were adopted, an absurd result could possibly occur in the application of the statute, namely where two identical parolees are released on parole on the same date; one parolee sustains an intermittent recommitment as a TPV years into the future and is then released on reparole one month later; and, shortly thereafter, both parolees are recommitted as CPVs on the same date. In these circumstances, we determined, "the individual with

8

the better parole record would receive the harsher treatment" and concluded that the General Assembly could not have intended such a result. *Id.* at 1172.

Ultimately, this Court based our holding on perceived legislative intent, underscoring the differential treatment between a TPV, who loses no street time for the parole period at issue, and a CPV, who automatically forfeits all street time for the parole period at issue. According to the *Anderson* Court, a grave inequity would transpire if a parolee recommitted as a CPV served a comparatively lengthy period of parole, and another parolee served the same amount of time on parole but is recommitted as a TPV and then as a CPV. On this basis, we determined that the policy of deterrence would be best served if a parolee who is recommitted as a CPV, aside from not receiving credit for any days during that parole period, also forfeited all credit earned for days spent in good standing during the prior parole period(s) where the parolee was recommitted as a TPV. This Court ended up affirming the Board on the ground that its action "was consonant with the legislative intent of [s]ection 21.1(a)." 472 A.2d at 1172.

In *Andrews*, we faced a state of facts similar to those in *Anderson*. While the Court in *Anderson* clutched onto legislative intent, the Court in *Andrews* offered a critique of the plain language of section 21.1(a) of the Parole Act to validate the same conclusion:

> Where the Board determines that a parolee who has been convicted of a crime committed while on parole should be recommitted to prison, **the General Assembly has given the Board no discretion with respect to the credits to which a [CPV] is entitled against the sentence's maximum term**. Section 21.1(a) clearly mandates that a [CPV] shall serve the "remainder of the term" originally imposed that the parolee would have been required to serve "had he not been paroled" with the parolee receiving "**no credit for the time at liberty on parole**." . . . The language

9

of the statute clearly shows the General Assembly intended to deny [CPVs] credit against their sentences' maximum terms for **any** street time accumulated while on parole.

516 A.2d at 842 (emphasis added).

In *Richards*, decided by the Court *en banc* in 2011, the parolee argued that under section 6138 of the Parole Code, he was entitled to retain credit for time served in good standing during the period of parole prior to his recommitment as a TPV, and that he did not forfeit this time when he was later recommitted as a CPV. This Court found no merit in the argument. Citing the *Anderson/Andrews* line of cases that came to fruition over the years, we reiterated:

> **It is clear from a plain reading of the statute**, **that while [TPVs] are entitled to credit for time served while on parole in good standing, such that they may only be recommitted for the remainder of their original sentences, [CPVs], on the other hand, are not entitled to any credit for street[]time**. Consequently, when a parolee is recommitted due to criminal conviction, his maximum sentence date may be extended to account for all street[]time, regardless of good or delinquent standing.

20 A.3d at 598-99 (emphasis added).

This Court also rejected the parolee's contention that the statute was ambiguous, requiring application of the rule of lenity, and again highlighted what we thought would be an absurd result if a contrary conclusion were reached:

> [M]aking a ruling that would favor parolees . . . would benefit no one, except for those parolees recommitted as [CPVs] who have had at least one prior recommitment as [TPVs]. **While [CPVs] with no prior recommitments as [TPVs] would forfeit all street[]time from their original parole date, those [CPVs] who do have prior recommitments as [TPVs] would only forfeit street[]time from their most recent reparole date**. Clearly, the General Assembly could not have intended such an absurd result.

10

*Id.* at 600 (emphasis added).

Thus, in *Richards*, we reaffirmed the *Anderson/Andrews* line of cases and verified their continued applicability to the codified version of the Parole Code.

However, subsequent to our decision in *Richards*, our General Assembly amended the Parole Code and added section 6138(a)(2.1) in 2012.[7] In doing so, the General Assembly, for the first time in the history of the Parole Statutes, vested the Board with discretion to grant a CPV with credit for time spent at liberty on parole. *See Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466, 469 (Pa. 2017). In relevant part, this provision states: "**The [B]oard may, in its discretion, award credit to a parolee recommitted [as a CPV] for the time spent at liberty on parole**," unless the parolee commits a crime enumerated in the statute. 61 Pa.C.S. §6138(a)(2.1) (emphasis added).[8] As such, and in stark contrast to former section 21.1(a) of the Parole Act and former section 6138(a)(2) of the Parole Code, a parolee who is recommitted as a CPV no longer forfeits, automatically and unconditionally, credit for days spent during the parole period in which the crime was committed.

In *Pittman*, which involved a single instance of parole, the parolee committed and was convicted of a crime and the Board recommitted him as a CPV. In declining to award the parolee credit, the Board informed him in its adjudication

---

[7] 61 Pa.C.S. §6138(a)(2.1), added by the Act of July 5, 2012, P.L. 1050 (Act 122). Section 6138(a)(2.1) became effective on September 4, 2012, and applies to any CPV recommitment decisions on or after that date. *Young*, 189 A.3d at 19 n.5.

[8] The Board is deprived of this discretion when "(i) [t]he crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.C.S. §9714(g) (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders)" or "(ii) [t]he parolee was recommitted under section 6143 (relating to early parole of inmates subject to Federal removal order)." 61 Pa.C.S. §6138(a)(2.1)(i)-(ii). Neither of these provisions applies to Penjuke.

11

that "as a [CPV] you automatically forfeited credit for all of the time that you spent on parole." 159 A.3d at 469. The Supreme Court determined that this statement conflicted with section 6138(a)(2.1), which "**clearly and unambiguously grants the Board discretion to award credit to a CPV recommitted to serve the remainder of his sentence**." *Id.* at 473 (emphasis added). Furthermore, the Supreme Court concluded that "the Board must provide a contemporaneous statement explaining its reason for denying a CPV credit for time spent at liberty on parole" in order "to honor the basic notions of due process" and effectuate the intent of the General Assembly in enacting section 6138(a)(2.1). *Pittman*, 159 A.3d at 475.

In *Young*, the Board recommitted the parolee as a CPV in 2013 based upon his commission of and conviction for retail theft. However, the Board, acting pursuant to section 6138(a)(2.1), decided to grant the parolee credit for 1,918 days for time he spent at liberty on parole before committing retail theft. The parolee was reparoled in 2014, a court later convicted him of burglary, and the Board again recommitted him as a CPV. In calculating the new maximum sentence date, the Board revoked the credit of 1,918 days that it had previously awarded the parolee in 2013 and added these days to extend the maximum sentence date.

On appeal, the Board argued that it possessed the statutory authority to rescind the 1,918 days of credit and cited, among other cases, *Anderson* and *Andrews*. An *en banc* panel of this Court rejected the Board's reliance on these cases as "misplaced" because they were decided under the Parole Statutes that were in effect prior to the addition of section 6138(a)(2.1). *Young*, 189 A.3d at 20. We explained that when the General Assembly codified section 21.1 of the Parole Act into section 6138 of the Parole Code in 2009, the General Assembly did not intend "to affect prior judicial construction of that section." *Young*, 189 A.3d at 21 n.10; *see id.* at 24-25

12

(Simpson, J., dissenting, joined by Covey, J.). However, we emphasized that this edict does not apply to our interpretation of section 6138(a)(2.1), reasoning that the provision was an amendment in its own right that occurred after the statutory codification in 2009. Therefore, we determined that the statutory provision was entitled to be interpreted and considered by the Court on a clean slate. *Young*, 189 A.3d at 21 n.10.

This Court in *Young* proceeded to address an issue that we documented as one of statutory construction and construed subsection (a)(2.1) in the context of section 6138(a) as a whole. Concluding that the Board lacked the necessary statutory authority, we reasoned:

> Under the current statutory regime, the [] Board must now decide whether to award or deny credit for street time upon a parolee's recommitment as a [CPV]. *See* 61 Pa.C.S. §6138(a)(2.1). **Once the [] Board grants sentence credit for street time, it is gone. The only extant "time spent at liberty on parole" will be that time that falls between the parolee's most recent reparole and his recommitment**.
> *Id.*

*Young*, 189 A.3d at 21 (footnote omitted) (emphasis added).

We further likened the case to those involving the creation of "penal checking accounts" and determined that, "[e]ffectively, the [] Board seeks to do the obverse by placing the sentence credit it awards to a parolee into an escrow account for later forfeiture." 189 A.3d at 21. We continued, "[t]he Parole Code does not authorize the Board to establish a 'sentence escrow account' any more than it authorizes criminal defendants to establish a 'penal checking account.'" *Id.* Ultimately, the *Young* Court concluded:

> When [the parolee] was recommitted in 2015 as a [CPV], the [] Board lacked the statutory authority to revoke the 1,918 days of credit it had awarded him in 2013. Those

13

> 1,918 days **had already been applied to his original sentence**. Just as **the [] Board** lacks the power to revoke days served on a sentence in prison, it **lacks the power to revoke days served on a sentence by reason of the [] Board's express award of credit in the course of a prior recommitment**.

189 A.3d at 21 (emphasis added). As a staple point, the *Young* Court looked at section 6138(a)(2.1) and observed that although the General Assembly granted the Board "the discretion to award sentence credit to a [CPV] it decides to recommit," the General Assembly "has not given the [] Board the concomitant power to revoke this decision, under any circumstances." 189 A.3d at 21 n.10.

In *Brady v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 262 C.D. 2018, filed August 7, 2018) (unreported), the Board recommitted a parolee as a CPV and took away the credit he accumulated in a prior parole period where he was recommitted as a TPV. Seeking to withdraw from representation, court-appointed counsel cited *Richards* as authority that the parolee's issue on appeal lacked arguable merit. In an unpublished decision authored by our esteemed and venerable colleague, then-Senior Judge Pellegrini, this Court disagreed, denied counsel's petition to withdraw, and remanded for additional briefing. We noted that *Young* specifically dealt with the situation where a CPV was awarded credit by the Board for time on parole, and that this credit was revoked by the Board when it subsequently recommitted the parolee again as a CPV. Nonetheless, this Court expressed the view that our decision in *Young* placed cases like *Richards*, and its originating precursors *Anderson* and *Andrews*, "into question." Slip op. at 9. We said:

> While the Board did not exercise its discretion one way or another in forfeiting street time, ***Young* raises the issue of whether the Board can reach back and force a now [CPV] to forfeit credit for time spent at liberty in good**

14

**standing that was previously credited to the parolee after a prior technical parole violation** pursuant to 61 Pa.C.S. §6138(c)(2). This section provides that a recommitted [TPV] ". . . *shall* **be given credit for time spent on parole in good standing** . . . ." (Emphasis added.)

Slip op. at 9 (bold emphasis added, italics original).[9]

## Discussion

On appeal,[10] Penjuke cites *Young* and argues that the rationale in that case naturally and necessarily extends to his case because street time credit, regardless of how it is granted, cannot be taken away after it has been granted. Therefore, Penjuke contends, the Board erred in revoking 793 days of credit that he received when recommitted as a TPV. Penjuke further asserts that the Board failed to articulate a sufficient reason for declining to award him credit pursuant to *Pittman*.

In response, the Board distinguishes *Young* on the ground that it did not exercise discretion and actively award Penjuke with street time credit. As such, the Board submits, this Court should reassert the validity of our precedent holding that a CPV forfeits all prior time spent in good standing for parole periods where the parolee was recommitted as a TPV. In addition, the Board candidly states that Penjuke was recommitted a few days before the Pennsylvania Supreme Court handed down *Pittman*, and the Board does not ardently oppose a remand for it to issue a new

---

[9] The *Brady* case was argued seriately with this case on November 14, 2018.

[10] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with the law, and whether necessary findings were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Hughes v. Pennsylvania Board of Probation and Parole*, 179 A.3d 117, 119 n.1 (Pa. Cmwlth. 2018).

15

statement explaining its reasons for denying Penjuke credit for time spent at liberty on parole.

**Legal Analysis**

After reviewing the 2012 statutory amendment to the Parole Code, 61 Pa.C.S. §6138(a)(2.1) (the 2012 Amendment), the Supreme Court's decision and analysis in *Pittman*, and our decision in *Young*, and upon reexamining the plain language of the statute, as well as due process concerns that currently arise as a result of the 2012 Amendment, we conclude that the *Anderson*/*Andrews* line of cases is no longer applicable precedent and now decline to apply the proposition of law that it formulated.

As with most matters that involve or implicate a statute, we begin by viewing and analyzing the express words of the statute itself. *See Kmonk-Sullivan v. State Farm Mutual Automobile Insurance Co.*, 788 A.2d 955, 959 (Pa. 2001).

In relevant part, section 6138(a) of the Parole Code, governing the CPV scenario, states, with the 2012 Amendment highlighted in bold:

> (a) Convicted violators.
>
> (1) A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the board be recommitted as a parole violator.
>
> (2) If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, **except as provided under**

16

**paragraph (2.1)**,[11] shall be given no credit for the time at liberty on parole.

(2.1) **The board may, in its discretion, award credit to a parolee recommitted under paragraph (2) for the time spent at liberty on parole** . . . .

61 Pa.C.S. §6138(a)(1)-(2.1) (emphasis added).

Section 6138(c), pertaining to the TPV situation, provides in pertinent part:

(c) Technical violators.

(1) A parolee under the jurisdiction of the board who violates the terms and conditions of his parole, other than by the commission of a new crime of which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere in a court of record, may be . . . recommitted after a hearing before the board or a waiver of the hearing.

\* \* \*

(2) If the parolee is recommitted under this subsection, the parolee shall be given credit for the time served on parole in good standing but with no credit for delinquent time and may be reentered to serve the remainder of the original sentence or sentences.

61 Pa.C.S. §6138(c)(1)-(2).

To begin with, it is evident from the above recitation of our case law that this Court has embraced three key interrelated points to sustain our conclusion in *Anderson* and *Andrews* and their progeny. First, the General Assembly intended the loss of all street time for a CPV to be a deterrent effect and this goal would be

---

[11] From here on out, we refer to section 6138(2) of the Parole Code as former section 6138(2) of the Parole Code to describe the statutory provision as it existed without being modified by the additional language of the 2012 Amendment.

17

undermined if a CPV with prior recommitment(s) as a TPV was able to retain credit for time spent in good standing. Second, an absurd result may occur because it was conceivable that a parolee with a better parole record would be the recipient of harsher treatment, for example, when a parolee remains on a lengthy stretch of parole and is later recommitted as a CPV, in comparison to a parolee who is recommitted as a TPV and also as a CPV during that same amount of time. Third, the language of the Parole Statutes indicated that the General Assembly intended to deny a CPV any credit for street time accumulated during any period of parole as reflected predominately by the fact that the Board had no discretion to award a parolee with credit following recommitment as a CPV.

On a fundamental level, a legal rule can only go so far as the reason that carries it; hence, "[w]here stops the reason, there stops the rule." *U.S. National Bank Association v. United Hands Community Land Trust*, 129 A.3d 627, 636 (Pa. Cmwlth. 2015) (citation omitted). Here, the concerns, justifications, and underlying analysis that comprised the scaffold of this Court's previous interpretation and construction of the Parole Statutes have all been severely eroded by the 2012 Amendment.

At the outset, a distinction can be made regarding the severity of the infraction that gives rise to the status of a TPV—violation of the terms and conditions of parole—when compared to a CPV—commission and conviction of a crime. For this reason, it makes complete sense that in devising the Parole Statutes, the General Assembly would not place a CPV on par with a TPV or deem the two as one and the same. With the 2012 Amendment, though, the General Assembly, in clear and unmistakable language, decided to give a CPV a chance to receive credit for street time, while, at the same time, preserving the grant of full credit it had always

18

bestowed upon a TPV. In apparent recognition of the dissimilarity intrinsic to the CPV vis-à-vis the TPV, the General Assembly readjusted the level, so to speak, when it enacted the 2012 Amendment, attempting to alleviate the harsh results that occur when a CPV has served a relatively long and successful period of parole but cannot obtain any street time credit.

Now that the 2012 Amendment provides the Board with discretion to grant a CPV with credit for time he spent at liberty during the parole period that resulted in recommitment as a CPV, the apprehension that encouraged this Court in *Anderson* and other cases to resort to legislative intent and depend heavily on the concept of a deterrent effect is unwarranted. This is because the parolee recommitted as a CPV, despite having committed and been convicted of a crime while on parole, unlike in the past, is presently able to obtain credit for street time at the discretion of the Board. Since the decision to grant or award credit to a CPV will be made on a case-by-case basis by the Board, utilizing its expertise in the area, *see Johnson v. Pennsylvania Board of Probation and Parole*, 532 A.2d 50, 53-54 (Pa. Cmwlth. 1987), we presume that the Board "will act in good faith in discharging [its] statutory duties," *Office of Governor v. Donahue*, 98 A.3d 1223, 1239 (Pa. 2014), awarding credit to a CPV when the circumstances merit it. Consequently, the fear expressed in our case law that a policy of deterrence would be eviscerated and an absurd or inequitable result promoted, based upon the difference in treatment the General Assembly previously afforded to the CPV (the grant of no credit) and the TPV (the grant of total credit), is no longer founded or defensible.

Currently, by virtue of the 2012 Amendment, the Board can provide a CPV with partial and, conceivably, even full credit, for the days spent at liberty on the parole. A CPV will be eligible to receive credit during the period of parole in

which the crime was committed, regardless of whether there have been any prior recommitments as a TPV. Succinctly stated, because the CPV has attained the right and possibility to acquire credit for street time, there is no cause for the Court to retain the concern in *Anderson* that "the individual with the better parole record would receive the harsher treatment," 472 A.2d at 1172, and we need not fret over whether or not a CPV could theoretically receive a "windfall" based upon the fact that the parolee has a history of recommitment(s) as a TPV. Relatedly, because the CPV, at present, does not forfeit all credit in an unconditional and automatic fashion, the Court has no occasion to base or preserve its interpretation of section 6138 of the Parole Code upon consideration of whether or not a CPV should, as an added form of retribution, forfeit time accumulated as a TPV as well. *Cf. Anderson*, 472 A.2d at 1171 ("[A] parolee with one or more prior recommitments as a TPV faces a substantially reduced period of confinement should he subsequently be recommitted as a CPV and the intended deterrent effect would be weakened accordingly."); *cf. also Richards*, 20 A.3d at 600 ("While [CPVs] with no prior recommitments as [TPVs] would forfeit all street[]time from their original parole date, those [CPVs] who do have prior recommitments as [TPVs] would only forfeit street[]time from their most recent reparole date.").

As a final matter, this Court, in cases such as *Andrews* and *Richards*, has discussed the "plain language" of the Parole Statutes to support our disposition by primarily highlighting the mandatory language of former section 21.1(a) of the Parole Act and former section 6138(a)(2) of the Parole Code, which states, "shall be given no credit for the time at liberty on parole," and stressing the Board's lack of discretion to award credit to a CPV. However, as noted above, the 2012 Amendment now specifically provides the Board with such discretion, *see Pittman*, 159 A.3d at

20

473, thereby undercutting the basis for our previous interpretation of the Parole Statutes. *Cf. Andrews*, 516 A.2d 842 ("[T]he General Assembly has given the Board no discretion with respect to the credits to which a [CPV] is entitled against the sentence's maximum term . . . .  The language of the statute clearly shows the General Assembly intended to deny [CPVs] credit against their sentences' maximum terms for any street time accumulated while on parole."); *cf. also Richards*, 20 A.3d at 598-99 ("It is clear from a plain reading of the statute, that while [TPVs] are entitled to credit for time served while on parole in good standing, such that they may only be recommitted for the remainder of their original sentences, [CPVs], on the other hand, are not entitled to any credit for street[]time.").

To advance sound statutory interpretation, this Court "must accept that when the General Assembly selects words to use in a statute, it has chosen them purposefully." *Commonwealth v. Scolieri*, 813 A.2d 672, 673 (Pa. 2002).  "We cannot change [statutory] words to reflect our own public policy concerns, nor can we edit them based on the supposition that we know what the General Assembly meant to say when it said something different." *Id.*  Thus, as a matter of statutory construction, our determination that the rationale of *Anderson* and *Andrews* is no longer applicable holds its weight irrespective of whether the General Assembly intended the 2012 Amendment to accomplish such a result, or overlooked the ensuing effect that the clear language it utilized would have on our preexisting judicial interpretation of section 6138 of the Parole Code as a whole. *See Young*, 189 A.3d at 21 n.10 ("Precedent interpreting [s]ection 6138(a)(2) prior to the 2012 amendment is not binding and has little value to the proper construction of Section 6138(a)(2.1).").  Simply put:  the 2012 Amendment destabilizes the raison d'être that once constituted and sustained the considered judgment of our precedent.

21

"A rule becomes dry when its supporting reason evaporates." *Commonwealth v. Ladd*, 166 A.2d 501, 506 (Pa. 1960). Since the 2012 Amendment has undermined the rationale reinforcing the *Anderson/Andrews* line of cases, we start anew and take a fresh review of the language and organizational composition of section 6138 of the Parole Code as it currently exists with the 2012 Amendment.

By its very structure, the statute creates two classes of parole violators, and the General Assembly clearly delineated a separate sphere between a CPV and a TPV. This is evidenced, among other ways, in the particular statutory subheadings, *see* 61 Pa.C.S. §§6138(a) (Convicted violators); 6138(c) (Technical violators),[12] and in section 6138(c) with the express designation of a TPV in terms of being a parolee who is **not** a CPV. *See* 61 Pa.C.S. §6138(c)(1). Within this dual classification system, our General Assembly created a clear-cut, distinctive framework for each group with respect to credit for street time following recommitment. For a parolee who is recommitted as a TPV, that "parolee shall be given credit for the time served on parole in good standing." 61 Pa.C.S. §6138(c)(2). With this credit added to the sentence, the parolee recommitted as a TPV then serves the remainder of the time that is left on the original sentence, *i.e.*, the original sentence minus the credit for the days in good standing and the days actually served in confinement. By contrast, the parolee who is recommitted as a CPV "shall be given no credit for the time at liberty on parole," **unless** the Board, "in its discretion," decides to "award credit to [the] parolee . . . for the time spent at liberty on parole." 61 Pa.C.S. §6138(a)(2)-(2.1). Regardless of how the Board exercises its discretion for a CPV, the amount of days that are not credited for the parole period will be added to the maximum sentence

---

[12] "[W]hile titles and headings of statutory provisions are not controlling, they may be considered as an aid to construction." *Commonwealth v. Smith*, 186 A.3d 397, 404 (Pa. 2018).

22

date, but the parolee recommitted as a CPV will only serve "the remainder of the term" of his sentence, *i.e.*, the original sentence plus the days that the Board did not grant credit and minus the days actually served in confinement.

This interpretation of section 6138(a) and (c) is simple enough. The issue then becomes whether a legitimate basis exists to collapse the statutory dichotomy of a TPV and a CPV, intermingle the two conceptually in the circumstances of reparole, and construe section 6138(a)(2) as authorizing the Board, in recommitting a CPV, to revoke street time that was previously awarded to a TPV.

As this Court has recognized, former section 21.1(a) of the Parole Act, former section 6138(a)(2) of the Parole Code, and current section 6138(a) of the Parole Code "do[] not specifically address the sanction for new criminal actions committed while on **re**-parole." *Dorsey*, 854 A.2d at 998 (emphasis in original). Based upon our evaluation, the clauses "had the parole not been granted" and "at liberty on parole" in section 6138(a)(2) cannot reasonably be interpreted to permit the Board to go beyond the "parole period" mentioned in that section, which is couched solely in relation and reference to the "parolee's recommitment" as a CPV. 61 Pa.C.S. §6138(a)(2); *see* 61 Pa.C.S. §6138(a)(1). Similarly, these same clauses in section 6138(a)(2) are incapable of generating a modifying or expounding effect onto the associative phrase "shall be given no credit" in a manner that would authorize the Board to apply a precept of forfeiture to all prior instances of parole that led to recommitment as a TPV. This is especially true considering that section 6138(c)(2) unequivocally states that the parolee will receive credit for time spent in good standing "[i]f the parolee is recommitted under this subsection," and the principle enunciated therein pertains exclusively and specifically to a TPV and without regard or connection to a CPV.

As such, we find that the language "shall be given no credit" is circumscribed and intended to apply only to the single and specific period of parole that led to recommitment as a CPV. After all, under section 6138(c)(2), the TPV who has spent time in good standing "shall be given credit," 61 Pa.C.S. §6138(c)(2), while, pursuant to section 6138(a)(2), the CPV who was at liberty on parole "shall be given no credit." 61 Pa.C.S. §6138(a)(2). Significantly, in both instances, the concept of "credit" is described by the verb "give," which means "to grant or bestow by formal action" or "to convey to another." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1192 (1986). Whereas the TPV situation requires the affirmative act of "giving," the CPV situation involves the refraining of such action by "not giving"; comparing the two side by side, they do not operate to cancel each other out and section (a)(2) does not negate section (c)(2). Put differently, although the CPV is "given no credit," the withholding of credit is passive conduct and cannot create a foundation to imply a confirmatory power to engage in active conduct and take away credit that was previously "given" to the TPV. Moreover, considering section 6138(a)(2) in conjunction with its counterpart provision, the 2012 Amendment, section 6138(a)(2.1), a harmonious relationship is created and internal consistency achieved within the CPV scheme: the CPV "shall be given no credit" except when the Board, in its discretion, decides to "award credit" to the CPV. In this regard, the 2012 Amendment is meaningful in that it tends to confirm that the concept of "credit" in section 6138(a) is confined to the CPV scenario only and strongly suggests that the notion of "credit" for a CPV is sealed off from the idea of "credit" for a TPV, with there being no correlation between the two.

This said, to uphold the Board's position, it would be necessary for section 6138(a) to contain language that invests the Board with the positive and

24

affirmative power to "take away" the credit that was already given to the TPV. Although our General Assembly has used words that would suffice to accomplish such a result, terms like "revoke," "rescind," and "forfeit" in a replete manner elsewhere in the Parole Code,[13] it did not employ terminology to this effect in section 6138(a). Under Pennsylvania law, the Board "can exercise only those powers conferred upon it by the General Assembly in clear and unmistakable language." *Young*, 189 A.3d at 22 (internal quotation marks and alterations omitted). Viewing section 6138(a) and section 6138(c) in a cohesive manner, we are unable to locate, much less vindicate, an express power in the Board to divest credit from a TPV for street time spent in good standing when recommitting a parolee as a CPV. And, absent such express authority, we lack the tools necessary to infer such an authority. As instructed in *Young*, this Court cannot "add words to [the Parole Code] that the legislature chose to omit" in order to provide the Board with "authorization to revoke sentence credit." 189 A.3d at 22.

Our plain language interpretation and understanding of section 6138 of the Parole Code is concordant with, and draws inspiration from, our recent decision in *Young*. Whether or not foreshadowed by the *Young* Court, the rationale espoused in that case applies here with compelling force.

---

[13] *See, e.g.*, sections 5902(e)(1)(iii), 6113(2), 6122(b)(2), 6143(c) of the Parole Code, 61 Pa.C.S. §§5902(e)(1)(iii) (stating that, with respect to an employee of a state correctional institution, the chief administrator may "revoke the ability of the employee . . . to carry or store a firearm and ammunition"); 6113(2) ("[N]o person shall be paroled or discharged from parole or have his parole revoked, except by a majority of the entire membership of the board."); 6122(b)(2) ("Any person who violates any of the provisions of this section . . . [s]hall forfeit that person's office or employment, as the case may be."); 6143(c) ("If the United States Immigration and Customs Enforcement is unable to or does not deport the inmate, the inmate shall be returned to the custody of the department and the board shall rescind the inmate's parole.")

As noted by this Court in *Brady*, section 6138(c)(2) positively states that a TPV "**shall** be given credit for the time served on parole in good standing." 61 Pa.C.S. §6138(c)(2) (emphasis added). Through this directive of the General Assembly, the Board has no choice over the matter and must grant credit to the parolee who is recommitted as a TPV. While in *Young* the case involved a CPV who was later recommitted as a CPV, the Board exercised its discretion under the 2012 Amendment, awarded credit to the parolee, and thereafter sought to take it away relying on its authority under section 6138(a). Here, the Board previously granted Penjuke credit per section 6138(c)(2) and is presently attempting to take that credit away based upon its authority under section 6138(a). No material distinction can be made from the situation where the credit is granted by the Board through the exercise of discretion, as in *Young*, to the situation where credit is granted through statutory mandate, as with Penjuke. Indeed, the two are analogous—actually duplicative and transposable—because the bottom line is that, in both events, credit has been granted, and once credited is awarded, "the street time is gone." 189 A.3d at 21.

In *Young*, we admonished that the grant of credit is "not a decision to defer the forfeiture of street time to a later time," *id.* at 19, and the Board cannot place sentencing credit "into an escrow account for later forfeiture." *Id.* at 21. The principles formulated and stated in *Young* are no less pertinent here. Akin to *Young*, a scenario where the "[t]he General Assembly has not granted the [] Board the power to revoke sentence credit it has decided to award," *id.* at 22, here the General Assembly has not entrusted the Board with the authority to revoke sentence credit granted by section 6138(c)(2) of the Parole Code. Therefore, pursuant to *Young*, the only time that remains eligible for forfeiture for a parolee recommitted as a CPV is the limited period of "time that falls between the parolee's most recent reparole and

26

his recommitment." *Id.* at 21. Stated otherwise, in recommitting Penjuke as a CPV, the Board could not "reach back," *Brady*, slip op. at 9, into the past periods of parole and also take away or revoke credit that was previously granted to Penjuke as a TPV—credit which, we stated in *Young*, should have "already been applied to his original sentence." 189 A.3d at 21.

At this point, we believe that the 2012 Amendment, as discussed in *Pittman* and our decision in *Young*, has altered the legal landscape and precludes this Court from continuing to adhere to the *Anderson*/*Andrews* line of cases as binding precedent. Our conclusion is underscored by application of the Statutory Construction Act of 1972 (SCA).[14] Perhaps above all else, section 1922(3) of the SCA provides a presumption that the General Assembly does not intend to enact laws that are unconstitutional, 1 Pa.C.S. §1922(3), "and statutes are to be construed whenever possible to uphold their constitutionality." *In re William L.*, 383 A.2d 1228, 1231 (Pa. 1978). "Therefore, if one interpretation results in . . . violation of the Federal or State Constitution, such interpretation cannot be accepted." *Department of Transportation, Bureau of Driver Licensing v. McFarren*, 525 A.2d 1185, 1188 (Pa. 1987).

In his brief, Penjuke argues that if the *Anderson* and *Andrews* progeny are reaffirmed, and the Board possesses the authority to revoke credit for street time accumulated as a TPV, then the Board must exercise its discretion under the 2012 Amendment in making the determination. Therefore, Penjuke contends, procedural protections are required to ensure that the Board does not exercise its discretion in an arbitrary, capricious, or unlawful manner.

---

[14] 1 Pa.C.S. §§1501-1991.

27

We agree. If this Court were to continue to endorse the *Anderson*/*Andrews* line of cases, serious questions would arise as to whether section 6138 is constitutional under the Due Process Clause.[15]

In *Wolff v. McDonnell*, 418 U.S. 539 (1974) , the State of Nebraska had a statutory regime that provided prisoners with a right to good-time credits and stated that the credits would be forfeited for certain types of misconduct. The United States Supreme Court determined:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior . . . . [T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557.

As explained by one commentator: "Typically, good time is credited in a lump sum at the beginning of the sentence . . . or credited month by month as it is earned . . . . Thereafter, prison officials use the threat of revoking good time as a strategy for maintaining institutional order and discipline." James B. Jacobs, *Sentencing by Prison Personnel: Good Time*, 30 UCLA L. Rev. 217, 225 & 234 (1982). "In most jurisdictions, good time can be revoked for any violation of the prison rules," *id.*, and "[g]ood time can [also] be revoked, often automatically, for

---

[15] U.S. Const. amend. XIV, §1.

28

violation of parole or conditional release conditions." *id.* at 236. Pennsylvania, however, does not have a traditional good-time credit system because the concept was declared unconstitutional by our Supreme Court as an infringement upon the judicial power of sentencing in *Commonwealth ex rel. Johnson v. Halloway*, 42 Pa. 446, 448 (1862). Nonetheless, street time credit under section 6138 of the Parole Code and the good-time credit schemes are substantially similar on a practical and functional level. Both are creatures of statutes, which are the means by which credit is conferred to a prisoner/parolee; both have a direct effect on the length of time a prisoner will spend incarcerated behind bars; and both, in theory, threaten forfeiture of earned credit to motivate good behavior while on parole. *See* Jacobs, *supra*, at 218, 237, *and compare with Young v. Pennsylvania Board of Probation and Parole*, 409 A.2d 843, 846-47 (Pa. 1979); *Anderson*, 472 A.2d at 1171; *see also Cardona v. Bledsoe*, 681 F.3d 533, 537 n.8 (3d Cir. 2012); *State ex rel. Hauser v. Carballo*, 261 N.W.2d 133, 140-42 (Wis. 1978).

As just stated, section 6138(c)(2) clearly declares that the TPV "**shall** be given credit for the time served on parole in good standing." 61 Pa.C.S. §6138(c)(2) (emphasis added). Given the mandatory and unqualified nature of the language the General Assembly has used, the Parole Code has vested a TPV with a statutory entitlement to street time credit sufficient to constitute a right deserving of protection under the Due Process Clause and the procedural safeguards necessary to ascertain and confirm "that the state-created right is not arbitrarily abrogated." *Wolff*, 418 U.S. at 557; *see Ponte v. Real*, 471 U.S. 491, 495 (1985); *Goss v. Lopez*, 419 U.S. 565, 573 (1975) (reiterating that "the procedural protections of the Due Process Clause [are] triggered by official cancellation of a prisoner's good-time credits accumulated under state law"). To comport with due process, before a state may deprive a

29

prisoner of accumulated sentencing credits or revoke sentencing credits that have already been earned, the state must afford the prisoner with notice and the opportunity to be heard at a hearing. *See Wolff*, 418 U.S. at 563-72.

Under former section 21.1(a) of the Parole Act and former section 6138(a)(2) of the Parole Code, the procedural mechanisms of notice and a hearing were unnecessary, or, in other words, would serve no purpose because the Board had no discretion to award credit to a CPV and forfeiture of credit for all street time was automatic and mandatory. As this Court explained in *Palmer*:

> [A] parolee who is recommitted as a [CPV] automatically forfeits the time spent on parole. Since the loss of street time is statutorily mandated, due process does not require the [B]oard to provide notice to the parolee because there is nothing the parolee can say on his behalf or in mitigation at the hearing to prevent the loss of time at liberty on parole.

704 A.2d at 197; *see Munguia v. United States Parole Commission*, 871 F.2d 517, 519 (5th Cir. 1989). In different words, when the decision to forfeit street time or good time credits is automatic and nondiscretionary, procedural deficiencies like lack of notice and/or a hearing amount to harmless error because the parolee does not suffer any discernable prejudice. *See D'Amato v. United States Parole Commission*, 837 F.2d 72, 77 (2d Cir. 1988); *see also Grossman v. Bruce*, 447 F.3d 801, 804-05 (10th Cir. 2006).

However, by virtue of the 2012 Amendment, the Board possesses discretion to award credit for street time in connection with any recommitment of a parolee as a CPV. As a result, the parolee must receive a hearing, independent of the revocation and recommitment proceeding for the CPV, that is devoted to the issue of whether the parolee should receive or retain credit for the prior parole periods that resulted in recommitment as a TPV. *See Carballo*, 261 N.W.2d at 144-45

30

(concluding that because the statutes "call for the Department's exercise of discretion as to the forfeiture of good time," "the Department must conduct an individual good time forfeiture determination for each discretionary parole violator"); *id.* at 142 n.25 (recognizing that "due process rights attach to the actual decision on forfeiture, apart from the decision on revocation"); *see also Teague v. Quarterman*, 482 F.3d 769, 774-75 & 777-80 (5th Cir. 2007).

Here, neither the Parole Code nor the Board's regulations provide a parolee with the right to a hearing in which the parolee can present evidence and/or advance argument to sway the Board that the parolee should be able to keep, or should not lose, credit that was earned when previously recommitted as a TPV. The regulation at 37 Pa. Code §71.4, governing the procedure for recommitment as a CPV, merely creates a right to a parole revocation hearing and states that "[t]he purpose of the hearing is to determine whether to revoke parole." 37 Pa. Code §71.4(2)(v). In this proceeding, the Board bears the burden of proving that the parolee was convicted of a new crime, and the Board can satisfy this standard, among other ways, by adducing documentary evidence establishing that the conviction had occurred. In response, the parolee may rebut the Board's evidence by showing that it inaccurately reflects that he was convicted of a new crime. *See Sanchez v. Pennsylvania Board of Probation and Parole*, 616 A.2d 1097, 1101-02 (Pa. Cmwlth. 1992), *Pierce v. Pennsylvania Board of Probation and Parole*, 500 A.2d 181, 183 (Pa. Cmwlth. 1985). This is the gist and full extent of the revocation hearing.

Critically, if the Board ultimately decides to recommit the parolee as a CPV after the revocation hearing, the regulation states that "the parolee will receive no credit for time spent at liberty on parole." 37 Pa. Code §71.4(2)(v). Consequently, the revocation hearing and recommitment decision is limited in scope

31

and does not afford a parolee with a meaningful opportunity to submit information and argument necessary for the Board to make a reasoned decision as to whether the parolee should be awarded, or otherwise be able to retain, credit for the prior period(s) of parole that resulted in recommitment as a TPV. *See Carballo*, 261 N.W.2d at 144-45. In fact, the regulation at 37 Pa. Code §71.4(2)(v) prohibits the Board from awarding credit in connection with the revocation hearing and, consistent with the *Anderson/Andrews* line of cases, effectively revokes any and all credit that was awarded or granted to the parolee earlier, including credit granted as a TPV under section 6138(c)(2).

Given the nature of the revocation hearing for a CPV, the determination that the Board must make to exercise its discretion and authority under the 2012 Amendment must happen at some point after the recommitment decision. The record does not disclose the process through which the Board exercises its discretionary decision pursuant to the 2012 Amendment. But wherever or however the Board postulates and renders that determination, the decision is not preceded by a hearing that is conferred by statute or regulation—one that is specifically committed to the issue of whether the parolee should be "re-awarded," or able to keep, the credit that the parolee previously accumulated as a TPV. Under Pennsylvania law, this Court "may not usurp the province of the legislature by rewriting the [Parole Code] to add hearing and evidentiary requirements . . . as that is not our proper role under our constitutionally established tripartite form of governance." *In Re Fortieth Statewide Investigating Grand Jury*, __ A.3d __, __ (Pa., Nos. 75, 77-82, 84, 86-87, 89 WM 2018, filed December 3, 2018), slip op. at 12-13. Hence, based on the defects of the procedure embodied in 37 Pa. Code §71.4, and the facts that the Parole Code and the Board's regulations do not vest a parolee with a hearing to safeguard the credit

bestowed by section 6138(c)(2), the CPV who was once a TPV is deprived of the credit he or she previously earned as a TPV without due process of law. *Cf. Edwards v. Balisok*, 520 U.S. 641, 646-67 (1997) (discussing the circumstances where a "procedural defect" would "necessarily imply the invalidity of the deprivation of [] good-time credits").

In the light of this day, it is highly questionable whether the interpretation adopted in the *Anderson*/*Andrews* line of cases, if continued onward, would be a constitutional construction of the current version of section 6138 of the Parole Code. If this Court were to preserve the interpretation from our precedent, we would most likely sanction a reading of section 6138 that would authorize the Board to deprive a parolee of his or her accumulated and entitled credits for time spent in good standing under section 6138(c)(2), without affording that parolee the procedural requisites that the constitution requires. Because we presume the General Assembly did not intend to violate the constitution, we conclude that the *Anderson*/*Andrews* line of cases must yield out of constitutional necessity. As a matter of statutory construction, our reading of section 6138 proffered above is preferred over that of *Anderson* and its successors. Therefore, we conclude that when the Board recommits a CPV, it cannot revoke the credit that a parolee has been granted in a previous parole that resulted in recommitment as a TPV.

## Conclusion

For the above-stated reasons, we decline to adopt the *Anderson*/*Andrews* line of cases and conclude that the Board lacks the statutory authority to revoke street time credit previously granted to a parolee as a TPV when it subsequently recommits the parolee as a CPV. As such, the Board erred when it revoked the 793 days of good

33

standing street time that Penjuke acquired in the parole period that led to his recommitment as a TPV and we reverse this portion of the Board's order. We remand to the Board with direction to reinstate the 793 days of credit to Penjuke and issue a new adjudication that makes the necessary adjustment to the maximum sentence date. Because credit is being restored to Penjuke for his recommitment as a TPV, and the Board's purported reasons for denying Penjuke an award of credit under the 2012 Amendment were based on the erroneous assumption that it could deprive Penjuke of this credit, the Board shall also issue a new statement of reasons under *Pittman* with respect to, and accounting only for, the time that he spent at liberty on parole and was recommitted as a CPV.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Brobson concurs in result only.

34

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Martin Penjuke, :
               Petitioner :
  :  No.  1304 C.D. 2017
       v. :
  :
Pennsylvania Board of Probation :
and Parole, :
               Respondent :

## *ORDER*

AND NOW, this 1st day of February, 2019, the August 18, 2017 order of the Pennsylvania Board of Probation and Parole (Board) is reversed in part and this matter is remanded. On remand, the Board shall issue a new adjudication and statement of reasons, pursuant to *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466 (Pa. 2017), in accordance with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Martin Penjuke, : 
                Petitioner : 
                 : 
      v. :   No. 1304 C.D. 2017
                 :   Argued: November 14, 2018
Pennsylvania Board : 
of Probation and Parole, : 
               Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

**DISSENTING OPINION**
**BY JUDGE SIMPSON**          **FILED: February 1, 2019**

For the reasons I set forth in my dissenting opinion in <u>Young v. Pennsylvania Board of Probation and Parole</u>, 189 A.3d 16 (Pa. Cmwlth. 2018) (*en banc*), <u>appeal</u> <u>granted</u>, ___ A.3d ___ (Pa., No. 455 MAL 2018, filed January 2, 2019), I respectfully dissent here. Summarizing, I believe that the majority in <u>Young</u> failed to follow the General Assembly's express pronouncement of intent, and that under prior binding decisions of this Court, the Pennsylvania Board of Probation and Parole had the authority upon recommitment of a parolee as a convicted parole violator to withdraw sentence credit it previously provided. I fear the majority in this case continues that error by relying on the <u>Young</u> decision here.

                                          _____
                                     ROBERT SIMPSON, Judge

Judges Covey and Wojcik join in this dissent.