# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Travis John Berry, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1039 C.D. 2020 |
| | : | Submitted: May 21, 2021 |
| Pennsylvania Parole Board, | : | |
| Respondent | : | |

BEFORE:  HONORABLE P. KEVIN BROBSON, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**          **FILED:  September 23, 2021**

Petitioner Travis John Berry (Berry) petitions for review of a final determination of the Pennsylvania Parole Board (Board), dated October 9, 2020, which denied Berry's request for administrative relief. For the reasons set forth below, we affirm.

Berry was incarcerated at a state correctional institution (SCI) when the Board reparoled him to a county detainer sentence on August 16, 2016. (Certified Record (C.R.) at 4-6, 18.) Berry was officially released from the SCI to the county detainer sentence on September 1, 2016, and, at that time, he had 765 days remaining on his sentence and a parole violation maximum date of October 6, 2018. (*Id*. at 6-8.) On January 26, 2017, Berry was reparoled from the county detainer sentence to an approved home plan. (*Id*. at 9, 18.)

On April 21, 2018, the Pennsylvania State Police charged Berry with one count of strangulation, two counts of simple assault, two counts of recklessly endangering another person, and three counts of harassment, and it issued a warrant for his arrest. (*Id*. at 11-16, 18.) On April 23, 2018, Berry's parole agent left written instructions at Berry's approved residence instructing him to report to the parole agent's office the following day. (*Id*. at 18, 20, 26.) After Berry failed to report as instructed, the Board declared him delinquent effective April 24, 2018. (*Id*. at 18, 21.) On June 27, 2018, Berry turned himself in to the Pennsylvania State Police, and the Board issued a warrant to commit and detain him that same day. (*Id*. at 22, 44.) On July 25, 2018, Berry was afforded unsecured bail in the amount of $25,000. (*Id*. at 65.)

On July 19, 2018, the Board notified Berry of the charges lodged against him and of its intent to hold a preliminary hearing and a detention hearing regarding those charges and his technical parole violation stemming from his failure to report to his parole agent. (*Id*. at 26.) Berry waived his rights to counsel and a hearing, and he admitted to violating a condition of his parole by failing to report. (*Id*. at 27-30.) By decision recorded on August 28, 2018 (mailed September 5, 2018), the Board recommitted Berry as a technical parole violator (TPV) to serve his unexpired term of 5 months and 12 days and detained him pending disposition of the outstanding criminal charges. (*Id*. at 42.) The Board's August 28, 2018 order to recommit recalculated Berry's parole violation maximum date as December 9, 2018, which accounted for the 64 days that Berry was delinquent. (*Id*. at 40-41.) The Board otherwise granted him credit for the time he spent in good standing at liberty on parole. (*Id*.) The Board's decision noted that Berry's parole violation maximum

2

date was "subject to change if [Berry was] convicted of [the] pending criminal charges[.]" (*Id*. at 43.)

The Board cancelled its warrant to commit and detain Berry effective December 9, 2018, the date his new parole violation maximum date expired, and he was released from an SCI on December 11, 2018. (*Id*. at 46-47, 90.) On December 17, 2018, Berry pled guilty to one count of terroristic threats with intent to terrorize another and two counts of recklessly endangering another person, and the remaining charges were nolle prossed. (*Id*. at 66-67.) On January 4, 2019, Berry received a total aggregate sentence of 18 to 84 months in an SCI, followed by 2 years of probation for the offense of unauthorized use of a motor vehicle. (*Id*. at 48-51, 66-67.) Shortly thereafter, on January 10, 2019, Berry received notice from the Board that a parole revocation hearing would be held based on his new convictions. (*Id*. at 52.) That same day, Berry waived his right to counsel and a revocation hearing and admitted to his new criminal convictions. (*Id*. at 56.) By decision recorded on March 7, 2019 (mailed March 12, 2019), the Board referred to its prior decision recorded on August 28, 2018, recommitting Berry as a TPV for his unexpired term, and it recommitted Berry as a convicted parole violator (CPV) to serve 24 months' backtime concurrent to his TPV backtime and recalculated his parole violation maximum date as August 28, 2020. (*Id*. at 73-74.) The Board exercised its discretion and did not award Berry credit for the time he spent at liberty on parole because the offenses to which he pled guilty were "assaultive in nature." (*Id*. at 74.)

Berry filed a *pro se* administrative remedies form with the Board on April 1, 2019 (received on April 4, 2019), objecting to the Board's credit allocation and recalculation of his parole violation maximum date. (*Id*. at 78-80.) In its

3

response to Berry's administrative remedies form mailed March 9, 2020, the Board reversed its decision recorded on March 7, 2019, as to Berry's maximum date, recalculated his maximum date as October 3, 2020 (using January 26, 2019, as Berry's correct custody for return date), and indicated that a new decision reflecting the change would be issued separately. (*Id.* at 90-91.) In its separate decision recorded on March 9, 2020 (mailed March 10, 2020), the Board stated that "[d]ue to technician error," it was modifying its decision recorded on March 7, 2019, "to reflect the correct parole violation max date" of October 3, 2020.[1] (*Id*. at 95.) In response, Berry submitted a second pro se administrative remedies form on April 2, 2020,[2] which the Board received on April 8, 2020, again challenging the Board's calculation of his parole violation maximum date. (*Id*. at 96-100.)

By final determination mailed on October 9, 2020, the Board denied Berry's request for administrative relief and affirmed its decision recorded on March 9, 2020. (C.R. at 123-25.) In so doing, the Board detailed how it calculated the amount of backtime Berry owed and explained that, because the Board recommitted Berry as a CPV, the Board had the statutory authority to recalculate his sentence to reflect that he received no credit for the time he spent in good standing at liberty on parole. (*Id*. at 123-24.) Berry then petitioned this Court for review.

---

[1] The Board's order to recommit indicates that Berry owed 626 days' backtime–*i.e.*, 765 days minus 139 days of backtime credit. Adding this amount to his correct custody for return date of January 16, 2019, yielded the new parole violation maximum date of October 3, 2020. (C.R. at 93.)

[2] Shortly thereafter, on April 19, 2020, Michael P. Smith, Esquire, of the Indiana County Public Defender's Office, appeared on Berry's behalf by submitting an additional administrative remedies form. (C.R. at 101-03.)

4

On appeal,[3] Berry argues that the Board erred in revoking the credit it previously granted him for time spent at liberty on parole in good standing when he was recommitted as a TPV in 2018. Berry analogizes the facts of his case to those in *Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401 (Pa. Cmwlth. 2019) (en banc), *appeal denied*, 228 A.3d 254 (Pa. 2020), and *Passarella v. Pennsylvania Board of Probation and Parole*, 217 A.3d 919 (Pa. Cmwlth. 2019). Berry explains that, in *Passarella*, even though the parolee committed a crime and a technical parole violation during the same parole period, this Court held that "the Board's failure to charge [the parolee] as a CPV until the conclusion of a subsequent parole period, during which [the parolee] had not committed a crime, meant that the Board was effectively prohibited from revoking [s]treet [t]ime accrued from a parole period during which [the] criminal violation of parole occurred." (Petitioner's Brief (Br.) at 18.) Berry argues that, while his "criminal and technical violations occurred during the same parole period, the Board's failure to charge him as a CPV until after the conclusion of [his December 9, 2018 parole violation maximum date, as determined by the Board's August 28, 2018 decision,] violates *Passarella's* rule against revoking previously[ ]granted [s]treet [t]ime." (*Id*. at 19.) In addition, Berry relies on *Penjuke*, in which this Court determined that, "because the Board previously granted [the parolee s]treet [t]ime following his [technical parole violation], it could not then revoke it upon a [criminal parole violation] at the end of a subsequent parole period." (*Id*. at 21.) Berry contends that *Penjuke* "supports overturning the Board's attempt

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

to revoke the [s]treet [t]ime with which it previously credited him as a TPV." (*Id.* at 22.)

Berry further explains that, while *Penjuke* and *Passarella* support his position, the Court's decisions in *Kazickas v. Pennsylvania Board of Probation and Parole*, 226 A.3d 109 (Pa. Cmwlth.), *appeal denied*, 238 A.3d 1170 (Pa. 2020), and *Monroe v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 1783 C.D. 2019, filed December 16, 2020),[4] are distinguishable. Berry explains that, in *Kazickas*, we found *Penjuke* and *Passarella* inapplicable and held that the Board can "revoke previously[ ]granted [s]treet [t]ime even after the conclusion of a sentence if the crime for which the parolee is detained as a CPV occurred during the same parole period for which the parolee was initially detained as a TPV with [s]treet [t]ime credited." (Petitioner's Br. at 26.) Berry distinguishes *Kazickas* on the basis that the petitioner in that case "was detained as a TPV upon his arrest for the very crime for which he was subsequently detained as a CPV," whereas here, the Board detained Berry as a TPV for failing to report to his parole agent and because he was "accused of a crime." (*Id.*) In *Monroe*, we found *Kazickas* controlling. *Monroe*, slip op. at 6. Berry contends that his circumstances differ from the petitioner's in *Monroe*:

> [T]he parole period that ended with [] Berry's recommitment as a TPV concluded on December 9, 2018, when the [m]ax [d]ate . . . was reached. [Berry] was not recommitted as a CPV until the Board's decision on March [7,] 2019 [(mailed March 12, 2019)]. This was well after the conclusion of the parole period which ended with the TPV detention. Thus, [] Berry's case can be distinguished from that of [the petitioner's in] *Monroe*, who was still serving his detention as a TPV when he was recommitted as a CPV.

---

[4] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent."

6

(*Id*. at 24.)

The Board responds that *Penjuke* does not apply because the criminal conduct that led to Berry's recommitment as a CPV occurred during the same period of parole as the violation that led to his recommitment as a TPV. (Board's Br. at 14.) Instead, the Board submits that *Kazickas* controls our decision in this case because, while at liberty on parole, Berry absconded from supervision on April 24, 2018, which ultimately led to his recommitment as a TPV, and during the same parole period, on April 21, 2018, Berry committed criminal offenses that ultimately led to his recommitment as a CPV. (*Id*. at 15.) Accordingly, the Board argues that it had the authority to deny Berry credit for the time he spent at liberty on parole.[5]

We agree with the Board. In *Penjuke*, and later in *Passarella*, the issue was whether the Board could forfeit the street time of a CPV that was previously credited to his original sentence pursuant to Section 6138(c)(2) of the Prisons and Parole Code, 61 Pa. C.S. §6138(c)(2), in a prior period of parole resulting in his recommitment as a TPV. In both cases, this Court held that the Board could not, in subsequent revocation proceedings recommitting the parolees as CPVs, revoke street time that was credited in the prior parole periods resulting in the parolees' recommitment as TPVs. *Penjuke*, 203 A.3d at 420; *Passarella*, 217 A.3d at 928. Like the parolees in those cases, Berry claims here that the Board, in recommitting him as a CPV, erred by revoking the street time credit previously awarded to him for his time spent in good standing on parole when he was recommitted as a TPV,

---

[5] Although the Board spends considerable time in its brief explaining why Berry is not entitled to credit for the period from September 1, 2016, to January 26, 2017, when he was on constructive parole from his Pennsylvania sentence but confined in a county institution on his detainer sentence, Berry does not address this issue in his brief, and, therefore, he has waived it. *Tyler v. Unemployment Comp. Bd. of Rev.*, 591 A.2d 1164, 1167 (Pa. Cmwlth. 1991) (issues not briefed are waived).

in violation of *Penjuke* and *Passarella*. We disagree. Two separate periods of parole, and thus street time credit, were at issue in *Penjuke* and *Passarella*, which distinguishes those cases from the instant matter.

This case is more similar to our recent decision in *Kazickas*. In *Kazickas*, the petitioner committed the technical violations that led to his recommitment as a TPV during the same parole period as the criminal activity that led to his recommitment as a CPV. As in the present matter, the Board in *Kazickas* first awarded the petitioner credit for time spent at liberty on parole in good standing when it recommitted the petitioner as a TPV, as required by Section 6138(c)(2) of the Parole Code, and revoked this credit when it subsequently recommitted the petitioner as a CPV. On appeal, we acknowledged the *Penjuke* Court's ruling that the Board is precluded from *reaching back in time into past periods of parole* to revoke street time credit that was previously granted to a TPV. *Kazickas*, 226 A.3d at 116. We affirmed the Board's decision to revoke the credit the petitioner received when he was recommitted as a TPV, however, reasoning that "[b]ecause the criminal conduct that led to [the petitioner's] CPV recommitment occurred during the *same parole period* as the violation that led to his TPV recommitment, *Penjuke*" is not applicable. *Id.* (emphasis added). While Berry argues that *Kazickas* is distinguishable because the petitioner in that case "was detained as a TPV upon his arrest for the very crime for which he was subsequently detained as a CPV," whereas here, the Board detained Berry as a TPV for failing to report to his parole agent and because he was "accused of a crime," (Petitioner's Br. at 26), we find this factual distinction inconsequential, as our decision in *Kazickas* was based on the fact that the petitioner committed the technical and criminal parole violations in the same parole period, just as Berry did in this case.

8

Neither are we persuaded by Berry's argument, which he asserts in the context of distinguishing *Monroe*, that the Board improperly reached back into a prior parole period because its March 7, 2019 decision recommitting him as a CPV was issued after Berry reached his parole violation maximum date as determined by the Board's August 28, 2018 decision that recommitted him as a TPV. As we stated in *Young v. Pennsylvania Board of Probation and Parole*, 189 A.3d 16, 21 (Pa. Cmwlth. 2018), *aff'd*, 225 A.3d 810 (Pa. 2020), and reiterated in *Penjuke* and *Kazickas*, the Board may order forfeiture of credit a parolee earned between the date of his most recent parole and his CPV recommitment.[6] Here, Berry earned the credit at issue between the date of his most recent parole–August 16, 2016–and the date he was declared delinquent–April 24, 2018. By decision recorded on March 7, 2019, he was recommitted as a CPV. Because there was no intervening parole period between August 16, 2016, and March 7, 2019, the credit Berry earned was subject to forfeiture. Accordingly, the Board did not err by revoking the credit Berry received for time spent in good standing at liberty on parole.

---

[6] We note also that, in *Miskovitch v. Pennsylvania Board of Probation and Parole*, 77 A.3d 66 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 322 (Pa. 2014), this Court stated that "[i]t is well-settled law that the Board retains jurisdiction to recommit an individual as a parole violator [and, thus, recalculate his maximum sentence date] after the expiration of the maximum term, so long as the crimes that [led] to the conviction occurred while the individual [was] on parole." *Miskovitch*, 77 A.3d at 73.

Based on the foregoing, we affirm the final determination of the Board.[7]

_____

P. KEVIN BROBSON, President Judge

_____

[7] On July 1, 2021, Berry filed a letter with the Court alleging that he has been experiencing "gross misrepresentation" due to his legal counsel's purported "refusal to contact [him] back on issues regarding [his] case at [No. 1039 C.D. 2020]." (Letter dated June 30, 2021, at 1.) He explains that he received a copy of his brief that was filed with the Court by his attorney, Michael P. Smith, Esquire, and that he was expecting to receive a copy of the Board's brief once filed. He claims that the public defender's office has refused to answer his calls and that his friend provided him with a copy of the docket sheet in this matter, which revealed that he was no longer being represented by his counsel, Mr. Smith, but was instead being represented by Jessica L. Brown, Esquire, of the Indiana County Public Defender's Office. Berry claims that neither attorney informed him of this "change in representation." Berry is mistaken, however, as Ms. Brown merely filed an entry of appearance on behalf of Berry in this case, and Mr. Smith has not withdrawn his appearance. Thus, there has not been a change in Berry's representation, as both attorneys currently represent Berry.

Berry also states that he learned that the Board filed its brief, which Mr. Smith never provided to Berry, and that both briefs had been submitted to the Court for review without oral argument. Berry argues that "[t]his ineffectiveness has cost [him] the opportunity to read the [Board's] brief, prepare an amended brief/oral argument[], and may very well cost [him] the case." (*See* Letter dated June 30, 2021, at 1.) While Berry's attorneys have the professional responsibility to keep Berry reasonably informed about the status of his case and are required to comply with reasonable requests for information, Pa. R.P.C. 1.4, Berry's ineffective assistance of counsel claim is premature, as it was asserted prior to the Court's decision. A claim of ineffective assistance of counsel

> has two parts, both of which must be shown for a parolee to be entitled to relief. The first is a showing that the parolee's counsel made errors so serious that counsel was not functioning as "counsel" guaranteed under the law. The second is that the parolee must show counsel's deficient performance prejudiced his defense.

*LaCourt v. Pa. Bd. of Prob. & Parole*, 488 A.2d 70, 75 (Pa. Cmwlth. 1985). "To show prejudice sufficient to satisfy the second requirement, a parolee must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Id*. It stands to reason that, without the benefit of the Court's decision, Berry could not, and has not, asserted his ineffective assistance of counsel claim in a way that would permit meaningful consideration by this Court. As we stated in *LaCourt*, in order for a parolee to establish the second element of an ineffective assistance of counsel claim, he must show that the outcome of the proceeding would likely have been different but for counsel's deficient performance. In order for Berry to make that showing here, he must first consider this opinion.

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Travis John Berry,                :
             Petitioner    :
                        :
        v.                :    No. 1039 C.D. 2020
                        :
Pennsylvania Parole Board,   :
            Respondent  :

## **O R D E R**

AND NOW, this 23rd day of September, 2021, the Pennsylvania Parole Board's final determination, dated October 9, 2020, is AFFIRMED.

                                                   
_____

P. KEVIN BROBSON, President Judge